UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 19-cv-80650-RUIZ

**BOCA RATON REGIONAL HOSPITAL, INC.,**
**f/k/a BOCA RATON COMMUNITY HOSPITAL,**

Plaintiff,

vs.

**CELTIC INSURANCE COMPANY d/b/a**
**CELTIC FROM SUNSHINE HEALTH,**

Defendant.
_____/

## Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Complaint[1]

Plaintiff, Boca Raton Regional Hospital, Inc. ("BRRH") files this Memorandum of Law in Opposition to Defendant's Celtic Insurance Company's, ("Celtic") Motion to Dismiss Complaint ("Motion") (Doc. 5) and states as follows:

### I. Introduction

---

[1] Doc. 1, Exhibit "A", referred to as "Compl."

BRRH, is a Not for Profit Hospital located in Palm Beach County, Florida (Compl. ¶2) that supplied and continues to supply hospital services to Celtic Subscribers (Compl. ¶ ¶7, 8). The services, both Emergency Services and Non-Emergency Services were Covered Services payable by Celtic (Compl. ¶9). BRRH and Celtic ("The Parties") do not have any agreements between them (Compl. ¶12). As a result, BRRH, a" Non-Network Provider"[2] was to be reimbursed "The usual and customary provider charges for similar services in the community where the services were provided ("U&C")[3] for Emergency Services (Compl. ¶¶16-17) and the amount due under the subscriber agreements between the members and Celtic for Non-Emergency Services (Compl. ¶15). Celtic has failed and refused to reimburse BRRH accordingly (Compl. ¶¶15, 16) which is the basis of this lawsuit.

Count I is based upon Celtic's failure to reimburse BRRH the statutorily mandated U&C (Compl. ¶24) for Emergency Services and NOT BRRH's full billed charges as Celtic contends (Motion Pp.2, 3).

Count II is based upon BRRH's standing as an assignee of the subscribers (Compl. ¶¶27-33) alleging that Celtic failed to reimburse BRRH the U&C for Emergency Services (Compl. ¶¶29, 32, 33) and the amount due under the subscriber agreements for non-emergency services (Compl. ¶¶28, 31, 33).

Count III is based upon BRRH's position as a third party beneficiary of the subscriber agreements (Compl ¶ 34).

Count IV is for a declaration of how much BRRH should be paid both for the claims on the spreadsheet and the claims that will continue to accrue (Comp ¶ 40).

---

[2] Comp. ¶¶12; Fla. Stat. §§ 627.64194(4).
[3] Fla. Stat. §§ 627.64194(4), 641.315 (5).

We will respond to each of Celtic's arguments below.

## II.  LEGAL STANDARD

Fed. R. Civ. P. 8(a) (2) requires that a pleading contain a "short and plain statement showing that the pleader is entitled to relief". To satisfy this standard, Plaintiff must allege sufficient facts that a claim for relief is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.   In ruling on a Motion to Dismiss the court must accept all well pled allegations as true and in the light most favorable to the Plaintiff.  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

As will be seen from the arguments below, BRRH has clearly met these standards.

## III. ARGUMENT

A. **Count I clearly states a cause of action for violation of a statute.**

Celtic makes two (2) arguments in support of its Motion regarding Count I, none of which are legally sufficient.

First, Celtic contends that "Plaintiff fails to allege that its billed charges are reasonable or consistent with the usual and customary provider charges in the community" (Motion Pp.4), although that is not the basis for this claim.  Celtic is correct in that assertion.   BRRH alleges that it has not been reimbursed the "Statutorily Mandated Amount" as set forth in Fla. Stat. §§ 627.64194(4), 641.315 (5), which is:

…the lesser of:

     (a) The provider's charges;

     (b) The usual and customary provider charges for similar services in the community where the services were provided; or

     (c) The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.

Compl. ¶¶ 17,24-26.

BRRH has not alleged that it is entitled to its full charges, but that Celtic has not reimbursed BRRH the Statutorily Mandated Amount. Fla. Stat. §§ 627.64194 (6) provides that "Any dispute with regard to the reimbursement to the nonparticipating provider of emergency…services as provided in subsection (4) shall be resolved in a court of competent jurisdiction…" and that is the basis for Count 1.

The Florida Legislature has clearly delineated different reimbursement methodologies to apply. Fla. Stat. §627.6044(1) provides that the payment can be: 1) usual and customary charges; 2) reasonable and customary charges; 3) charges based upon the prevailing rate in the community; or 4) some other methodology.

For Emergency Services, the Legislature chose a combination of 1 and 3 and specifically did not choose to use the term "reasonable".

If the legislature meant something else, it would have said so. For instance, Fla. Stat. §641.51(5) (c) which deals with paying a physician for a second opinion provides that "the organization shall pay the amount of all charges which are usual, reasonable and customary in the community...."

Celtic relies upon *Payne v. Humana Hosp. Orange Park*, 661 So. 2d 1239 (Fla. 1st DCA 1995), a case involving a common law cause of action for imposition by a consumer disputing a hospital's charges, for the proposition that BRRH is only entitled to recover "a fair and reasonable charge". In *Payne* the Plaintiff alleged that the Hospital charges were unreasonable and unconscionable which, the court correctly stated, must be taken as true for the purposes of determining if a cause of action has been stated Id. at 1240.  However *Payne* itself is inapplicable to this matter as the count in Payne was a common law cause of action whereas BRRH is pursuing Celtic on statutory grounds.

BRRH has alleged the requisite elements to state a cause of action for breach of Celtic's statutory obligation.

<u>Secondly, Celtic contends that the schedule attached to the complaint[4] which lists all the information necessary for Celtic to identify the claim is insufficient.</u>

BRRH had previously submitted all of these claims to Celtic (Compl. ¶13) and Celtic is the one that issued claim numbers it is now requesting from BRRH. This is similar *to South Miami Hosp. v. Department of Health & Rehabilitative Servs*., 623 So. 2d 510, 511 (Fla. 3d DCA 1993), where the Court held  that Medicaid acted arbitrarily and capriciously in denying a claim based upon hospital's failure to supply the Medicaid identification number when the hospital supplied the patient's social security number and Medicaid could have used that information to determine the Medicaid Identification number.

BRRH provided all of the information necessary for Celtic to identify the claims.[5] Exhibit "A" to the Complaint lists sufficient information for Celtic to identify each claim and if it was

---

[4] Celtic is correct that the reference in Compl. ¶12 and Fn. 4 should have been to Exhibit "A" and not to exhibit "B".

for emergency services. The account number, patient name, date of service, policy number, ER Charge Description, along with other information was supplied so that Celtic can identify the claims which they already processed and therefore knew which ones were for Emergency Services. In addition, the column ER Charge Description clearly identifies those that were for Emergency Services.

In the two cases cited by Celtic, Plaintiff's did not supply the identity of the patient or the date when the procedures were done. *Sanctuary Surgical Ctr., Inc. v. United Healthcare, Inc.*, NO. 10-81589 LEXIS 57952 at *7 (S.D. Fla May 27,2011*); United Surgical Assistants, LLC v. Aetna Life Ins. Co*., No: 8:14-cv-211-T-30MAP, LEXIS 150190 at *6-*9 (M.D. Fla. Oct. 22, 2014).

Here, BRRH has supplied detailed information regarding each claim.

B. **Count II clearly states a cause of action for breach of contract to an assignee.**

Celtic makes four (4) arguments in support of its Motion regarding Count II, none of which are legally sufficient.

First, Celtic contends that BRRH must identify which claims were assigned (Motion Pp. 7) BRRH alleged that Subscribers assigned their benefits to it (Compl. ¶ 27). Celtic can through discovery get additional information including the assignments if they so desire.

Second, Celtic contends that BRRH has not identified any contractual provision that has been breached (Motion Pp. 7).

---

[5] An unreacted copy of which has been sent to Celtic. Compl. ¶ 11 (footnote 4).

As a preliminary matter, it must be pointed out that at the time the complaint was filed, BRRH did not have the subscriber agreements although requested simultaneously with the filing of the complaint (Compl.¶ 5); Request for Production Number 1 (Doc.1-3). The request asked that the agreements be identified as to which claim they applied to. Based upon an agreement between the Parties, the discovery is not yet due. However, Celtic attached agreements to its motion. They were not authenticated, nor were they identified as to which claim or claims they applied to. BRRH questions which claims each agreement applies to and if there are additional agreements that apply to the claims. Without that information, BRRH is at a disadvantage in responding to the Motion and as a result disputes the same. See *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) cited by Celtic in Fn. 3 (Motion Pp. 8). Subject to this dispute, BRRH will identify the contractual provisions that were breached.

In a similar case involving the same Defendant, the Court held that, "Notably, there is no reason to address the details of the Policy at the pleading stage. Plaintiff can simply allege that Defendant failed to pay Plaintiff the amount due under the Policy. *See Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) ("The elements of breach of contract are (1) a valid contract; (2) a material breach; and (3) damages." (applying Florida law)). *S. Baptist Hosp. of Fla. v. Celtic Ins. Co.*, No. 3:17-cv-1214-J-34JBT 2018 U.S. Dist. LEXIS 112671 at *5-*7 (M.D. Fla. June 1, 2018). Magistrate Order adopted *S. Baptist Hosp. of Fla. v. Celtic Ins. Co.,* 2018 U.S. Dist. LEXIS 111790, 2018 WL 3302755. BRRH has complied with these requirements.

For Emergency Services, it is failure to pay U&C (Compl. ¶¶ 28-30). Fla. Stat. § 627.64194 designates the insurer as solely liable for the cost of Emergency Services to the provider and authorizes the Provider to sue the Insurer. Fla. Stat. § 627.64194(6) is incorporated into the Subscriber Agreements. See *Adventist Health System v. Blue Cross and Blue Shield*, 934

So. 2d 602, 604 (Fla. 5th DCA 2006), where the Court reversed a judgment on the pleadings and found that a noncontract provider had the right to sue an HMO over the amount paid, which is the basis of our suit. See also *Merkle v. Health Options*, 940 So.2d 1190, 1996 (Fla. 4th DCA 2006) (private cause of action for violation of HMO Act, since that provision was for the protection of providers). Florida courts have routinely held that a contract made in an area that is heavily regulated is presumed to have incorporated statutory requirements into the contract. *Found. Health v. Westside EKG Assocs.*, 944 So. 2d 188, 195 (Fla. 2006). (Fla. Stat. § 627.6131, prompt pay statute is incorporated into the contract).

In the case of non-emergency services, it is the Amount Due under the agreement. *S. Baptist Hosp. of Fla.* at *5-*7.

Third, Ambetter is not obligated to pay BRRH its full charges (Motion Pp. 8). We agree as discussed through this memo.

Fourth, anti-assignment language in Agreements (Motion Pp. 8).

Fla. Stat. § 627.638(2) requires an insurer such as Celtic to honor the assignments, nullifying contrary language in the subscriber agreements.

Also, by partially paying the claims (Compl. ¶¶ 13-16) Celtic has approved the assignments, which they acknowledge is the criteria in the 2016 and 2017 agreements (Motion Pp. 8). Celtic agrees to honor the assignments in the 2018-2019 agreements if the member "specifically authorizes in writing, the payment of benefits directly to any hospital" (Motion pp. 9), which is what happened. (Compl. ¶ 27).

BRRH has stated a cause of action for breach of contract to an assignee.

C. **Count III clearly states a cause of action for a third party beneficiary claim.**

Celtic makes one (1) argument in support of its Motion regarding Count III, which is not legally sufficient.

Celtic argues that the subscriber agreement terms determine whether or not it is intended to primarily and directly benefit the third party (Motion Pp. 10) and that none of the contracts do.

In *Foundation Health v. Westside EKG Associates,* 944 So. 2d 188,195 (Fla. 2006) the Court found no basis to conclude that Provider is precluded as a matter of law from establishing that it is an intended beneficiary and since the case incorporates the HMO Act in the subscriber agreement and the HMO act requires the HMO to pay the provider, provider is an intended third party beneficiary.

Fla. Stat. § 627.64194(2)-(3) makes the insurer solely liable for the payment of Emergency Services to non-participating providers, creating a manifest intent to benefit the hospital by making Celtic solely liable for payment to a non-participating hospital.

"[s]ervice providers are recognized as third party beneficiaries of insurance contracts in other contexts" and that an insurer's failure to pay a medical service provider is a valid basis for a breach of contract action. Id. at 219 (citing Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885 (Fla.2003)). Based on this analysis, the Fourth District ultimately "conclude [d] that service providers, claiming as third party beneficiaries under a subscriber's contract, may bring an action founded on the HMOs' failure to comply with the prompt pay provisions of the [HMO] Act."…

We agree with the Fourth District. As we explain below, medical service providers may bring a breach of contract action as a third-party beneficiary of the contract between the HMO and its subscriber based upon the HMO's failure to comply with section 641.3155, Florida Statutes (2001).

*Foundation* at 193.

The contract between an insurer and subscribers allowing payment directly to hospitals has been held to show clear intent to benefit the hospital. *Vencor Hosps. v. Blue Cross Blue Shield*, 169 F.3d 677, 680 (11th Cir. 1999).In *Health Options v. Palmetto Pathology Services, Inc.*, 983 So.2d 608 (Fla. 3rd DCA 2008), HMO agreed to supply services and pay for them (Fn 9), thereby making provider a third party beneficiary of the contract.

The language cited by Celtic in the 2018 and 2019 agreements attempting to prohibit third party beneficiary status for providers, (Motion 10) is contradicted by Fla. Stat. § 627.64194(2)-(3), which is incorporated into the agreements insofar as Emergency Services are concerned and for all services since they provide for direct payment to providers based upon assignment (Motion Pp. 9).

Apparently, there is no prohibition regarding third-party beneficiary status in the 2016-2017 agreements (Motion Pp. 11).

None of the cases cited by Celtic involve health care providers or incorporated statutory requirements.  As a result, BRRH is an intended third party beneficiary of the subscriber agreements.

D. **Count IV clearly states a cause of action for declaratory relief.**

**10 |** P a g e

Celtic makes one (1) argument in support of its Motion, which is not legally sufficient.

<u>Celtic's argument for denying Declaratory Relief is based upon the belief that BRRH is not entitled to such relief because the previous counts address all issues rendering declaratory relief improper</u>.

Count IV is the only count asking for an interpretation of Fla. Sta. §§ 627.64194 (4) and 641.513 (5) (Compl.¶ 27). It is also the only count asking for the interpretation so that the reimbursement formula can be applied to future claims which occur continuously since Ambetter members continue to access BRRH for Emergency Services (Compl.¶ 40).

BRRH will not be able to "secure full, adequate and complete relief" without a declaration, as Celtic correctly acknowledges is the test in quoting *Fernando Grinberg Tr. Success Int'l Props. LLC v. Scottsdale Ins. Co.*, No. 10-20448-CIV, 2010 WL 2510662, at *1 (S.D. Fla. June 21, 2010) (Motion Pp.12).

The cases cited by Celtic all involve breaches of contract and not statutory determinations or determinations regarding how to apply a statute to future claims.

Celtic ignores the cases involving Emergency Services and Hospitals where the courts held that a declaratory action was a valid remedy. *Peter F. Merkle, M.D., P.A. v. Health Options, Inc.*, 940 So. 2d 1190, 1199-1200 (Fla. 4th DCA 2006) (quoting *Adventist Health System/Sunbelt, Inc. v. Blue Cross & Blue Shield*, 934 So. 2d 602 (Fla. 5th DCA 2006)). In Adventist the court specifically held that when there is a question of statutory interpretation that request falls specifically within the purpose of the declaratory relief statute and is the proper time to request such relief Id. at 604.

BRRH has a pressing need and valid legal reasoning for requesting declaratory judgment and therefore Celtic's Motion to Dismiss count IV should be denied.

### IV. Conclusion

WHEREFORE, BRRH respectfully requests that the Court enter an order denying Celtic's Motion to Dismiss.

Dated: June 28, 2019
Respectfully submitted,

/s/ Alan M. Fisher
ALAN M. FISHER, Esq.
Attorney for Plaintiff
Florida Bar No: 237396
Alan M. Fisher, P.A.
818 A1A North
Suite 303
Ponte Vedra Beach, Florida 32082
Tel: (904) 285-0070
Fax: (904) 245-1945
Primary e mail: amfpalegal@aol.com
Secondary e mail: amfpalegal@gmail.com
Alt. e mail: eclark.amfpalegal@gmail.com

By:  /s/Alan M. Fisher
Alan M. Fisher, Esq.

*Counsel for Plaintiff, Boca Raton Regional Hospital, Inc.*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 28, 2019, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  /s/ Alan M. Fisher