UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 19-80650-CIV-RUIZ

BOCA RATON REGIONAL HOSPITAL, INC.,
f/k/a Boca Raton COMMUNITY HOSPITAL,

       Plaintiff,

vs.

CELTIC INSURANCE COMPANY d/b/a
AMBETTER FROM SUNSHINE HEALTH,

       Defendant.
_____/

## **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**

Defendant Celtic Insurance Company ("Celtic"), through undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), files this Reply in support of its Motion to Dismiss Complaint (the "Motion") [ECF No. 5] and in response to Plaintiff's Opposition (the "Opposition") [ECF No. 10]. The Court should grant the Motion and dismiss the Complaint [ECF No. 1-2] filed by Plaintiff Boca Raton Regional Hospital, Inc. ("Plaintiff"), for failure to state a claim. The Opposition does not—and cannot—overcome the serious pleading deficiencies in the Complaint.

## **ARGUMENT**

### **A. Plaintiff's Claim for Alleged Statutory Violation Must Be Dismissed**

Count I of Plaintiff's Complaint, limited to alleged emergency services and Celtic's alleged breach of Section 627.64194, Fla. Stat., fails to provide sufficient detail to state a plausible claim. The arguments in Plaintiff's Opposition do nothing to remedy this deficiency.

Plaintiff premises this claim on reimbursements mandated under Sections 627.64194(4) and 641.513(5), Florida Statutes.  Compl. ¶¶ 24–25; Opp'n at 3.[1]  As relevant to the Complaint here, these statutory provisions mandate that "[a]n insurer must reimburse a nonparticipating provider" for "covered emergency services" for the lesser of the provider's charges, the usual and customary provider charges, or a mutually-agreed charge.  *See* §§ 627.64194(2), 627.64194(4) & 641.513(5).  "Emergency services" is defined as follows:

> medical screening, examination, and evaluation by a physician or, to the extent permitted by applicable law, by other appropriate personnel under the supervision of a physician, to determine if an emergency medical condition exists, and if it does, the care, treatment, or surgery for a covered service by a physician necessary to relieve or eliminate the emergency medical condition within the service capability of a hospital.

*See* §§ 627.64194(1)(a), 641.47(8).

Plaintiff's complaint fails to provide sufficient detail to state a plausible claim here.  Not only does Plaintiff's incorporated claims spreadsheet fail to allege that its billed charges are reasonable or consistent with the usual and customary provider charges, but the attached fee schedule fails to contain information necessary to enable Celtic to analyze the purported claims.  Count I is limited to a subset of Plaintiff's claims spreadsheet, yet the spreadsheet itself does not show which of the claims fall under Count I and those that do not.  *Compare* Compl. ¶ 23 *with* Compl. Ex. A.

Plaintiff's reliance on *South Miami Hospital v. Department of Health & Rehabilitative Services*, 623 So. 2d 510 (Fla. 3d DCA 1993) is inadequate.  There, in interpreting the sufficiency of a Medicaid reimbursement claim for adjudication by an agency under the Florida Administrative Code due to the inadvertent omission of a patient's Medicaid number, the court held that the agency acted arbitrarily and capriciously in denying the claim for failure to supply

---

[1]  Plaintiff's Opposition cites Section 641.315(5), Florida Statutes, but it appears Plaintiff intended to cite to Section 641.513(5).

that limited information within the agency's own records. *See id.* at 510–11. In contrast, the issue Celtic raises in its Motion do not concern an administrative agency's actions under the Florida Administrative Code, but rather involves Plaintiff's failure to meet pleading standards under the Federal Rules of Civil Procedure. The one has nothing to do with the other.

Plaintiff's conclusory assertion in the Opposition that the fee schedule is sufficient because it identifies the "account number, patient name, date of service, policy number, ER Charge Description, [and] other information" misses the mark. Opp'n at 6. It remains the case that Plaintiff's claims spreadsheet and its extraordinarily vague complaint lack the necessary information for Celtic to identify the purported claims. The conclusory allegation in the Complaint that "[t]his Count is limited to claims for Emergency Services," Compl. ¶ 23, contains zero factual allegations regarding which of the claims fall within the statutory definition of "emergency services."

The requirement to plead facts necessary to meet the statute's definition of "emergency services" is an elementary matter of pleading a statutory cause of action. To plausibly plead a claim, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282–83 (11th Cir. 2007) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001)). Courts in this Circuit have routinely required a plaintiff pursuing a statutory claim to plead facts that plausibly meet the statutory definition. *See, e.g.*, *Arko Plumbing Corp. v. Rudd*, No. 13-CV-22434-UU, 2013 WL 12059615, at *3 (S.D. Fla. Sept. 26, 2013) (under Computer Fraud and Abuse Act, which has a statutory definition of "damage," "pleading a type of damage within the statutory definitions is an essential element" of the claim); *Brown v. Regions Mortg. Corp.*, No. 1:11-CV-3716-SCJ-ECS,

3

2012 WL 13013583, at *3 (N.D. Ga. Dec. 3, 2012) (to state a claim under Fair Debt Collection Practices Act, a plaintiff must "allege facts showing how [the] defendant meets the statutory definition of a 'debt collector'"), *report and recommendation adopted*, 2012 WL 13013984 (N.D. Ga. Dec. 31, 2012).

Here, Plaintiff's contention that "the column ER Charge Description clearly identifies those that were for Emergency Services" does nothing to remedy the pleading deficiency linking those descriptions to the statutory elements in Sections 627.64194 and 641.47. Celtic is thus left without the proper pleading notice required under the Federal Rules, and Count I must be dismissed.

### B. Plaintiff's Claim for Breach of Contract – Assignment of Benefits Should Be Dismissed

Celtic's Motion argued that Plaintiff's Complaint does not allege compliance with any of the requirements for completing of an assignment of benefits under Celtic's Member Contracts, and otherwise fails to allege that Celtic approved any assignments purportedly at issue. Motion at 7-9. In its Opposition, Plaintiff argues that Section 627.638(2), Florida Statutes, "requires an insurer such as Celtic to honor the assignments, nullifying contrary language in the subscriber agreements." Opp'n at 8. Plaintiff is wrong. By its own terms, Section 627.638(2), Florida Statutes, requires only that Celtic recognize the assignment of the limited right to *receive* direct payment of patients' benefits – and nothing more. Indeed, the Florida legislature expressly recognizes Celtic's broad right to limit assignability of its members' "rights under the policy," with a narrow exception authorizing members to assign *their* right to receive "payment of benefits directly" from the insurer. *Compare* Fla. Stat. § 627.664(1) ("*Subject to the terms of the policy or any contract relating thereto*, an assignment by an insured or by any other owner of

4

rights under the policy is valid" (emphasis added)) *with* Fla. Stat. § 627.638(2) (narrowly limiting insurer's right to prohibit by contract "payment of benefits directly to" provider).

The cases cited by Plaintiff in the Opposition have no bearing on the assignment issue identified in Celtic's Motion. *See, e.g.*, *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913 (11th Cir 1999) (holding that the five-year statute of limitations for a breach of contract had run); *S. Baptist Hosp. of Fla., Inc. v. Celtic Ins. Co.*, No. 3:17-CV-1214-J-34JBT, 2018 WL 3321443, at *2 (M.D. Fla. June 1, 2018), *report and recommendation adopted*, 2018 WL 3302755 (M.D. Fla. July 5, 2018) (finding that the use of the term "Appropriate Amount," which does not appear in the policy, was "confusing and unnecessary" and requiring the plaintiff to replead the count for breach of contract and declaratory relief); *Adventist Health Sys./Sunbelt, Inc. v. Blue Cross & Blue Shield*, 934 So. 2d 602, 604 (Fla. 5th DCA 2006) (reversing the trial court's dismissal of a declaratory action as an impermissible advisory opinion and holding, instead, that "an actual dispute, not merely a hypothetical one, exists between the parties" regarding provider charges); *Merkle v. Health Options, Inc.*, 940 So. 2d 1190, 1198 (Fla. 4th DCA 2006) (holding that a private cause of action exists under Section 641.513(5)). None of these holdings contradict Celtic's argument that the allegations in the Complaint are inadequate to state a claim.

Plaintiff's additional citation to *Foundation Health v. Westside EKG Associates*, 944 So. 2d 188 (Fla. 2006) to support Count I is equally unavailing. Opp'n at 8. *Foundation Health* stands for the proposition "that unless the terms of the individual HMO contract or the HMO Act properly provides otherwise, section 641.3155 [the prompt pay statute] may be incorporated as a term in the HMO contract for the purpose of alleging a breach of third-party beneficiary contract claim." 944 So. 2d at 196–97. Indeed, as the Motion explains, the terms of the Member

5

Contracts have limitations on the assignment of benefits, and the Complaint contains no allegations that these requirements were met. *See* Motion at 8–9.

Finally, Plaintiff argues that Celtic has somehow approved the assignments by paying certain claims (albeit at less than the inflated rates that Plaintiff demands in this lawsuit). Opp'n at 8. Celtic did not waive its right to enforce the plans' anti-assignment clauses simply by remitting payment of the insured's out-of-network benefits directly to Plaintiff. *See Griffin v. Verizon Commc'ns, Inc.*, 641 F. App'x 869, 873-74 (11th Cir. 2016) (rejecting waiver and estoppel arguments as to the enforceability of anti-assignment clause in ERISA plan); *see also Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, No. 13-CV- 6551, 2014 WL 4058321, at *3 (S.D.N.Y. Aug. 15, 2014) (holding anti-assignment clause not waived because "[h]ealth insurance companies routinely make direct payments to healthcare providers without waiving anti-assignment provisions").

For these reasons and the others raised in the Motion, the Court should dismiss Count II.

### C. Plaintiff's Claim for Breach of Third-Party Beneficiary Contract Should Be Dismissed

Celtic's Motion argued that Plaintiff's claim for breach of third-party beneficiary contract is foreclosed by express language in the 2018 and 2019 Member Contracts that could not be more clear:

> **No Third Party Beneficiaries**
> *This contract is not intended to, nor does it, create or grant any rights in favor of any third party*, including but not limited to any *hospital*, physician or medical practitioner providing services to you, and *this contract shall not be construed to create any third party beneficiary rights*.

Motion at 10-11. The 2016 and 2017 Member Contracts likewise evince no manifest intent to *primarily* and *directly* benefit Plaintiff. Motion at 8-9, 11.

Notwithstanding this express language disclaiming and rejecting any intent to create third-party beneficiaries, Plaintiff's Opposition argues that its claim is supported by *Foundation Health*. Opp'n at 10. Yet that case, however, held only that "***unless the language of the specific contracts properly provides otherwise***, [plaintiff's] status as a nonparticipating provider does not preclude it, as a matter of law, from establishing the intent element in a breach of third-party beneficiary contract claim." 944 So. 2d at 194 (emphasis added). The court clarified that "***to the extent other clauses in the individual HMO contracts evince a contrary intent, this is a determination we leave to the trial court***." *Id*. at 198, n.9 (emphasis added). For these reasons, the *Foundation Health* court's ruling does not control whether Plaintiff may state a claim for breach of third-party beneficiary contract, and this Court must look to the language of the specific Member Contracts at issue.

In this case, because the plain language of the Member Contracts expressly state that the parties did not intend to vest Plaintiff with any enforceable rights created through the contract, Plaintiff's claim for breach of third-party beneficiary contract must be dismissed. *Networkip, LLC v. Spread Enterprises, Inc.*, 922 So. 2d 355, 359 (Fla. 3d DCA 2006) (holding that "the express intent demonstrated by the Agreement between Network and Infinity is to eliminate third-party actions" and "because there can be no intended third party to benefit under the Agreement, there is no cause of action for breach of a third party beneficiary contract."); *Wolf v. Celebrity Cruises, Inc.*, 101 F. Supp. 3d 1298, 1311 (S.D. Fla. 2015), *aff'd*, 683 F. App'x 786 (11th Cir. 2017) (dismissing third-party beneficiary claim with prejudice because contract at issue contained language that "this Agreement shall not be deemed to provide third persons with any remedy, claim, right, or action or other right," and thus, "[t]hrough its express terms, no reading of that language would allow for a finding of either an express or implied intent by the

parties to primarily or directly benefit [plaintiff]."); *Smith v. Rainey*, 747 F. Supp. 2d 1327, 1341–42 (M.D. Fla. 2010) (dismissing third-party beneficiary claim "in light of the unambiguous expression of the parties' intent" with respect to contract expressly stating that "this contract shall not be construed as providing any enforceable right to any third-party.").

Plaintiff's Opposition cites no cases, in any context, in which a court has authorized a third-party beneficiary claim to enforce a contract that on its face expressly disclaims and rejects any intent to create third party beneficiary rights.[2] Nor does Plaintiff provide any authority for its argument that 627.64194, through which Plaintiff alleges a statutory cause of action in Count I, also creates an action for breach of third-party beneficiary contract. For these reasons and the others raised in the Motion, the Court should dismiss Count III.

### D. Plaintiff's Claim for Declaratory Judgment Should Be Dismissed

Count IV of the Complaint seeks a declaratory judgment that Ambetter is liable for payment of the usual and customary charges for emergency services, a determination of those usual and customary charges and how they are computed, and a declaration that Plaintiff was damaged by Ambetter's underpayments or non-payments. Compl. ¶¶ 37–40. Collectively, the other counts in the Complaint all raise the *same* issues and would require the Court to answer the *same* questions regarding whether Ambetter is liable for such claims and, if so, in what amount.

Plaintiff's Opposition simply claims that it will be unable to secure full, adequate, and complete relief without the requested declaration. Opp'n at 11. However, Plaintiff completely ignores the fact that the requested relief here is "subsumed within its claim[s] for breach of contract," *Fernando Grinberg Tr. Success Int'l Props. LLC v. Scottsdale Ins. Co.*, No. 10-20448-

---

[2] Plaintiff's cited cases *Vencor Hosps. v. Blue Cross Blue Shield of R.I.,* 169 F.3d 677 (11th Cir. 1999) and *Health Options, Inc. v. Palmetto Pathology Services, P.A.*, 983 So. 2d 608, 615 (Fla. 3d DCA 2008) likewise do not involve contracts containing express no-third-party-beneficiary clauses. Opp'n at 10.

CIV, 2010 WL 2510662, at *2 (S.D. Fla. June 21, 2010), as well as within its statutory claim.  In other words, the issues on which Plaintiff seeks a "declaration" are all subsumed within the issues raised in the other counts, and this count for declaratory judgment is thus wholly and impermissibly duplicative of Plaintiff's other counts and should be dismissed.  Motion at 12.

## CONCLUSION

For the foregoing reasons, the Court should grant Celtic's Motion and enter an Order dismissing Plaintiff's Complaint for failure to state a claim.

Dated: July 12, 2019

Respectfully submitted,

HOGAN LOVELLS, US LLP
600 Brickell Ave., Suite 2700
Miami, FL 33131
Telephone:  (305) 459-6500
Facsimile:   (305) 459-6550

Allen P. Pegg, Esq.
Florida Bar Number: 597821
Allen.Pegg@hoganlovells.com
Craig H. Smith, Esq.
Florida Bar Number:  96598
Craig.Smith@hoganlovells.com
Florida Bar Board Certified – Health Law
James L. VanLandingham, Esq.
Florida Bar Number:  106761
James.Vanlandingham@hoganlovells.com

By: s/Craig H. Smith
Craig H. Smith, Esq.

*Counsel for Celtic Insurance Company*

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on July 12, 2019, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

              /s/Craig H. Smith
              Craig H. Smith, Esq.