```
1                 IN THE UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2                          WEST PALM BEACH
                      CASE NO. 19-CV-80650-RAR
3    _____

4    BOCA RATON HOSPITAL, INC.,
                         Plaintiff
5         vs.                              September 10, 2019

6    CELTIC INSURANCE COMPANY,
                         Defendant.
7
     _____
8                     TELEPHONIC MOTION HEARING

9          BEFORE THE HONORABLE RODOLFO A. RUIZ, II,

10             UNITED STATES DISTRICT COURT JUDGE

11   _____
                         A P P E A R A N C E S
12
     FOR THE PLAINTIFF:      ALAN M. FISHER, ESQ
13   BOCA RATON HOSPITAL,    Alan M. Fisher
     INC.                    818 A1A North, #303
14                           Ponte Vedra Beach, FL 32082
                             (561) 743-0745
15                           Amfpalegal@aol.com

16   FOR THE DEFENDANT:      ALLEN P. PEGG, ESQ
     CELTIC INSURANCE        JAMES L. VANLANDHAM, ESQ
17   COMPANY                 Hogan Lovells LLP
                             600 Brickell Avenue, 27th Floor
18                           Miami, FL 33131
                             (305) 459-6641
19                           Allen.pegg@hoganlovells.com
                             James.vanlandingham@hoganlovells.com
20

21   REPORTED BY:           GIZELLA BAAN-PROULX, RPR, FCRR
                            United States Court Reporter
22                          400 North Miami Avenue, 8th Floor
                            Miami  FL  33128
23                          (305) 523-5634
                            gizella_baan-proulx@flsd.uscourts.gov
24

25
```

<u>P R O C E E D I N G S</u>

*(The following proceedings were held in open court.)*

**THE COURT:**  Good morning, everyone.  This is Judge Ruiz.  If I could get everyone's appearances for the record in case number 19-80650, Boca Raton Regional Hospital, formerly known as Boca Raton Community Hospital vs. Celtic Insurance Company, doing business as Ambetter From Sunshine Health.

On behalf of the plaintiff, appearing telephonically, who do I have on the line?

**MR. FISHER:**  Good morning, Your Honor, Alan Fisher on behalf of the plaintiff.

**THE COURT:**  And on behalf of the defendant?

**MR. PEGG:**  Good morning, Your Honor.  Allen Pegg of Hogan Lovells on behalf of Celtic.  I'm joined on the line this morning with James VanLandingham, also of my office.

**THE COURT:**  Thank you.  First and foremost, let me let you both know how much I appreciate everyone getting on the line, especially Mr. Fisher, understanding that you are traveling.

As many of you, I'm sure, are aware, having recently joined the District, we inherit a lot of pending motions and cases from our colleagues.  This matter, in particular, is one of my older pending motions to dismiss.  And although I am loathe to interrupt folks on vacation, this has been fully briefed.

1        And I thought it best and most efficient for the Court

2    to go ahead and briefly review where we are in this case and

3    rule at the end of today on the pending motion to dismiss so

4    that we can breathe some new life into this case and keep the

10:06  5  momentum going.

6        So this is not going to be a belabored hearing because

7    both sides have given me quite a bit of material, and I had a

8    chance to review the motion, the response, and the reply.  I

9    wanted to share, perhaps, my main concerns about where we're at

10:07 10  with the current complaint.

11        And I will begin by speaking about the spreadsheet and

12    what we have in terms of purported emergency services

13    identified in that exhibit.

14        From my review -- and this really is for Mr. Fisher --

10:07 15  I'm somewhat concerned that we lack some clarity regarding

16    exactly which claims pertain to emergency services and some

17    explanation, if you will, about how those services are not

18    reasonable, related, or necessary, or they were underpaid.

19        I know that some arguments have been made that the

10:07 20  defendant is in the best position because they already know

21    account numbers, patient names, date of service, but I have an

22    issue identifying the purported claims.

23        Even though they say emergency services, my

24    understanding is that it is a subset of the spreadsheet that

10:08 25  qualifies.  And under 627.64194 sub 2 of the Florida statutes,

1   as well as 627.641.94(1)(a), we have a definition of emergency

2   services that, in my view, requires us to get a little more

3   detailed so I can figure out how to analyze these claims.

4           So I am prepared to grant the motion to dismiss with

10:08   5   leave to amend as it pertains to that particular count so that

6   we can get more specificity.

7           But Mr. Fisher, do you want to address that?  Because

8   my concern is we have some statutory causes of action here.  We

9   need to talk about emergency services.

10:08   10          And under the Twombly Iqbal standard, it appears to me

11   that there's some conclusory allegations here that make it

12   difficult for the defense to respond and dispute exactly which

13   ones of these charges in the spreadsheet are an issue.  Can you

14   address that for me, please?

10:09   15          **MR. FISHER:**  Certainly, Your Honor.  And I appreciate

16   the Court allowing me to appear by cell phone.  I was concerned

17   for two reasons.  Number one, I've been on river cruises before

18   where the cell phone reception and the internet has been almost

19   non-existent, so I was concerned about that because I wanted to

10:09   20   adequately respond to the Court.

21          As far as the spreadsheet, if it says ER

22   tri-subscription, that means that the patient came in through

23   the emergency room.  And it's our contention that those were

24   emergency services.

10:09   25          And as far as being able to identify them, what

defendant said in their response was two things:  A) They

wanted the claim number.  Well, they're the ones who issued the

claim number.  B) They wanted the invoice number.  We actually

did include the account number.

10:10      If it would make things clearer, we can amend the

spreadsheet and just have the spreadsheet just for emergency

services.  We have alleged that each of these are emergency

services and care within the meaning of the statute.  And as

far as the --

10:10      **THE COURT:**  Go ahead.  Go ahead.  I didn't mean to cut

you off.

      **MR. FISHER:**  As far as the entertainment, what we're

alleging is that they did not pay us the usual-and-customary

charges in the community for these services.  And that will be

10:10    a question of fact.  It will probably require expert testimony

as to what is a usual-and-customary charge in the community.

The allegation is that they paid us less than the

usual-and-customary charges in the community.

      **THE COURT:**  Correct.  I mean, and that is -- I agree

10:11    to that.  I think that you're right.  I mean, that was -- the

usual-and-customary charges -- I guess my concern is, do you

believe I have sufficient allegations to know how they did not

pay the usual-and-customary charges?

      I know that those magic words are spelled out in the

10:11    complaint.  I also am very cognizant of having to plead with

1  enough specificity to know.

2       I mean, were they underpaid or perhaps some

3  explanation as to why they are not usual or customary?  Or is

4  perhaps -- is there specific charges?  Because, for instance,

10:11  5  we have a lot of them.  I mean, I think the difference is 2

6  million to 10 million.  I'm ball parking, but it's quite a bit

7  of underpayment.

8       And in a past life, I encountered personal injury

9  litigation, and there, I'm very familiar with the idea of

10:11  10  related charges and underpayment.

11       My concern on that is typically we would understand a

12  little more about how there has been underpayment because,

13  obviously, Celtic believes they paid what the customary charges

14  were in the community.  I don't know that we need to have

10:12  15  extensive pleading in that regard.

16       I'm just saying, do you believe that the complaint, as

17  constituted, explains how, other than just formulaically saying

18  that "these are underpayments."

19       Is there anything in there that actually explains how

10:12  20  they're underpayments?  Because that's where I think we have a

21  breakdown.  Tell me -- if it does answer it, I'm missing it.

22  Tell me.  I just don't see it.

23       **MR. FISHER:**  Well, what we have alleged is that they

24  have not paid the usual-and-customary charges in the community.

10:12  25       The definition of usual-and-customary charges in the

1   community is basically the essence of this case.

2          And for us to -- what would be the usual-and-customary

3   charges in the community, we could allege, that it's what other

4   hospitals in the community charge, and if that would suffice.

10:13   5          But as far as anything else, it would really be expert

6   testimony to determine what is the usual-and-customary charge

7   in the community.

8          THE COURT:  But that to me -- I mean, it might seem --

9   I don't think it's a trivial addition because, you know,

10:13  10   framing it to say that what another hospital in the community

11   would be billing and getting reimbursed for those charges, it

12   gives us a base line.  Right?

13          It gives us a guideline for the theory of the case

14   that, to me, will also allow us to get more streamlined

10:13  15   discovery, which, to me, would be for the plaintiff's benefit,

16   in a way, because then we're not going ahead and looking at

17   comparators that are inapplicable.  We can guide everybody.

18          Mr. Pegg, what say you on the amendment that's

19   essentially been suggested?  And I think Mr. Fisher's view is

10:13  20   we have enough.  I'm inclined to give him a chance to correct

21   it because it's unclear to me exactly what the comparators are.

22          He's now sharing that, really, what other hospitals

23   would pay for these services.  And perhaps he can delineate it

24   a little more about which services are at issue, although he is

10:14  25   indicating it is those within the spreadsheet marked ER.

1        And, look, I don't know that that couldn't be cured by

2   Mr. Fisher specifically pleading and saying that services

3   identified as emergency in the spreadsheet attached hereto as

4   exhibit A were underpaid because hospitals would pay these

10:14  5   amounts, and, again, out-of-network hospitals because I think

6   that's really what the comparators are.  And that would give us

7   the specificity, I think, to understand exactly how we have

8   underpayments.

9        What say you to that?  Because, I think, at least on

10:14  10   your end, the defense isn't necessarily conceding or indicating

11   that there isn't some cause of action here.  I get the bigger

12   sense that it's just insufficiently pled in the eyes of the

13   defense.

14        What say you if that is broken down or specified in a

10:14  15   cleaner way when it comes to out-of-network hospitals and how

16   it's compared to other providers?  Is that something that you

17   think will cure your concern -- to the defense?

18        **MR. PEGG:**  Judge, I think it will.  And I think Your

19   Honor hit it on the head, which is that we're not seeking

10:15  20   dismissal with prejudice of this claim.

21        There is possibility that an out-of-network hospital,

22   such as Boca Raton, can plead under 627.64194.  We just think

23   that, as we laid out in the motion to reply, they've only done

24   it in a formulaic parroting-the-language-of-the-statute way

10:15  25   with insufficient factual support, plausible factual support.

1          This is the first that I believe Your Honor and myself

2   are hearing the plaintiff articulate that, "Well, no, it's a

3   subset of the claims that are identified as ER."  I would think

4   that they would have put that perhaps in the opposition brief

10:15   5   if that was the case, but we didn't see it.  And I think that

6   plaintiff's the master of its own complaint.

7          But -- and if it wants to travel on the allegation

8   that all of those identified as ER, in fact, qualify, factually

9   under the statute that's his choice.

10:16   10          I think we all could recognize that perhaps people

11   come into the ER, are admitted through the ER with things that

12   would not -- you know, issues, medical issues that are not

13   factually qualifying under the statute.

14          But again, if that's the additional detail that the

10:16   15   plaintiff chooses to provide in its complaint, I think that it

16   likely could then, at least, state a cause of action under the

17   statute.

18          **THE COURT:**  Well --

19          **MR. PEGG:**  It's a long-winded way of saying, Your

10:16   20   Honor, that I think your proposal is a sensible one.

21          **THE COURT:**  And look, I tend to agree.  I think that

22   -- look, I will confess, you know, as a gatekeeper here, there

23   is a cause of action here.  I mean, I see it.  I think we all

24   see it.  We just got to get it up to snuff, if you will, so it

10:16   25   satisfies pleading standards.

1          I don't think it's far away.  I think it's not going

2   to take too much, but today is beneficial because now I know

3   we're talking about a subset of ER claims compared to what is

4   usual-and-customary reimbursement when it comes to

10:17   5   out-of-network hospitals.

6          Something along those lines, I think, is probably

7   going to give us enough structure so that the defense can, in

8   an intelligible way, defend.

9          It will also give us some parameters so this case

10:17  10   doesn't require a ton of discovery that's irrelevant because

11   it's going to give us guideposts about the kind of charges --

12   because I think Mr. Fisher is right.

13          At some point we're going to get expert testimony

14   about what out-of-network hospitals in similar positions

10:17  15   provide for ER services.  And that's really what this case, in

16   my view, is all about.

17          And to that end, let me pivot because where I'm a

18   little more concerned on amendment is -- and I'll work a little

19   backwards, if you will.  I know that we have a declaratory

10:17  20   judgement count at the end.

21          I have to say, Mr. Fisher, my concern on that is, you

22   know, the declaratory judgement act and its use.

23          Philosophically -- and I think supported by case

24   law -- the bottom line is we want to use declaratory judgment

10:18  25   actions to satisfy ambiguity.  We want to use those types of

1   acts and those types of counts to clarify, perhaps, how the

2   statute should be applied to customary charges.

3           What I see here is an alternative count to the breach

4   of contract, and I don't see a true ambiguity.  In fact, I have

10:18   5   to agree with the defense that everything you're seeking is

6   probably subsumed in the breach of contract.  You know, the

7   idea, as you've floated out in your response that, "Well, this

8   is almost forward-looking that I'm going to make a finding as

9   to how these charges will be applied."

10:18  10          I can confess I don't see a world in which that would

11  happen because these things are so fact-specific, and the

12  services are so unique.  And as you even stated, expert

13  testimony establishes comparators for reimbursement rates.

14          I don't see how a declaratory judgment would properly

10:19  15  be used to set a base line going forward.  And I don't think

16  that that would ever be supported by law and fact.

17          The flip side of that is you're seeking a difference

18  of 8 million or so in the breach of contract.  If you prevail

19  on that, I think the relief you're looking for in the

10:19  20  declaratory judgment is a problem.  I just don't see why we

21  would be using that.  It's the same issues; it's the same

22  concerns.

23          And if you look at some of the 11th Circuit case law

24  that has been cited, you know, even some of the case law in my

10:19  25  Southern District, you know, I look at the Eisenberg case,

2009, Westlaw 1809994, where it talks about asking the Court to make factual determinations regarding possible breaches of contract the defendant's alleged to have committed ends up really resolving the declaratory judgement action because

10:20    questions regarding whether contract was adequately performed is really unrelated to the declaratory judgment act.  And to me I think it's subsumed.

I mean, the Fernando Grinberg, 2010, Westlaw 2510662, points out that we shouldn't be entertaining these actions when

10:20    we know that you can secure full and adequate relief.  And to the extent you believe you can't, which is kind of what you've hinted at in your response, my reply to that is that additional relief is not relief I can grant under the declaratory judgment act.

10:20    So I think I have a bit of a problem, but tell me, Mr. Fisher, I mean, where are you on that?  Because I'm a little concerned with using the declaratory judgment act the way you proposed with a strong breach-of-contract claim that's coming back.  What do you think?

10:20    **MR. FISHER:**  Well, Your Honor, the problem is that we need to get a determination of the definition of usual-and-customary charges in the community.  And I tailored the complaint for the declaratory judgment action to just ask for that.

10:21    So in other words, there's different case law right

1  now on what that definition is.  There's some case law that

2  says you're looking at an average of the charges in the

3  community.  There's other case law that says you look at

4  charges and reimbursements.

10:21  5        And on a go-forward basis, instead of having to come

6  in front of the Court every time, because there are already a

7  substantial number of claims that have presented themselves at

8  Boca since our spreadsheet, that this issue is going to be ripe

9  for.

10:21 10        And to have to keep coming back to court and suing

11  them to determine that is exactly what one of the purposes of

12  the declaratory judgment statute is:  To essentially determine

13  a definition of the statutory provision --

14        **THE COURT:**  Well, I agree -- I mean -- right.  And I'm

10:22 15  sorry to cut you off.  I guess -- I don't want to lose my train

16  of thought.

17        I see what you're saying:  You're trying to prevent

18  the need to return to court.  I mean, again, I know that's

19  forward-looking, your concern that there will be future

10:22 20  breaches.

21        You know, statutorily, though, we have factors that we

22  can consider.  That's always been the way the statute has been

23  structured.  And you know as well as I do that in a jury trial

24  in a case like this, we would be marching up experts on both

10:22 25  sides, and it would be up to a jury, in many cases, to decide

1  what they believe is usual and customary.

2       And I think oftentimes these cases are very difficult

3  to rule on even on a summary judgment because what happens is,

4  unless the parties really agree on comparable charges, the

10:22  5  statute gives us a set of factors, right, that we can look at.

6       And so for me to make a definitive finding that

7  perhaps one interpretation of that statute -- because really

8  what you're saying to me is, "Judge, the statute by its very

9  nature is ambiguous."  And I think the reality is the statute

10:23 10  gives us a tool kit, and we have got to use it to figure out if

11  these charges line up to what the statute allows.

12       I don't know that this is a situation where I would be

13  making a finding that the statute should always be interpreted

14  this way, when experts can use different metrics.  And that's

10:23 15  why I'm concerned.  I don't even see that -- let's assume that

16  I agree that the breach of contract doesn't cover all of your

17  concerns on this front -- and respectfully, I think it does.

18       But let's assume for a minute it doesn't, and I wade

19  into the waters of a declaratory action.  My concern there is

10:23 20  I'm being to asked to interpret a statute that on its face I

21  don't find to be ambiguous.  Its plain meaning gives us

22  structure on how to analyze charges.

23       At that point this is -- and trust me.  Who doesn't

24  want to eliminate the need to have you guys marching into court

10:23 25  all the time?  If I could do it, I would love to do it and

1 give you guys guide posts and say, "Hey, Boca, every time you

2 submit a charge, if it falls under these rubrics, you better

3 pay it."  I'd love that too, but the reality is I don't know if

4 the statute permits that.

10:24  5        Mr. Pegg, what's your take on this point before I move

6 on?  Because I'm concerned this is just not a proper use of the

7 dec action.

8        **MR. PEGG:**  Judge, I completely agree.  And if Your

9 Honor peruses the relief that they request, it's all about --

10:24 10 it's not construing the statute.  It's construing the facts,

11 and those facts are going to be construed in the context of,

12 let's say, the statutory claim that's going to come back or to

13 the extent that a contractual claim survives, in order to

14 prevail and get -- or not prevail.

10:24 15        But in order to resolve those other non-declaratory

16 judgment act claims, the finder of fact -- through expert

17 testimony or otherwise -- are going to need to determine:  How

18 do we find what the usual and customary rates are?  And then

19 how does that line up to the amounts that have been paid?  And

10:24 20 is it sufficient such that it's a defense verdict, or is it

21 insufficient such that the plaintiffs recover something?

22        Those issues are questions of fact that will be

23 resolved in the other counts.  They're not a construction of

24 the statute and ambiguity that the plaintiff points to in the

10:25 25 legislative language.

1          And so I agree that for the reasons -- the same

2   reasons articulated in the Judge Cooke and other cases from the

3   Southern District of Florida, this is not what the declaratory

4   judgment act is properly used for.

10:25   5          **THE COURT:**  Well, let me move on from that because I

6   don't want to belabor that point too much.  And we have two

7   more counts that I do want to discuss.  And I'll start with --

8   I'll stay with you, Mr. Pegg, on this one.

9          The other count that troubles me a little bit is the

10:25  10   third-party beneficiary count, and that's because my

11   understanding is we have two subsets of claims.

12          The 2018 and 2019 claims seem to be forestalled by the

13   very plain language of the policies at issue.  I mean, they

14   specifically address the inability, if you will, to have a

10:26  15   third-party beneficiary.  I mean, I'm reading from it.

16          It says, "This contract is not intended to nor does it

17   create or grant any rights in favor of any third party

18   including but not limited to any hospital, physician, or

19   medical practitioner providing services to you.  And this

10:26  20   contract shall not be construed to create any third-party

21   beneficiary rights."

22          Then you have the 2016 and 2017 member contracts.  And

23   those don't really manifest any intent as pointed out to

24   primarily and directly benefit the plaintiff which is not

10:26  25   anticipating exclusive provider with Ambetter and has no

1  contract whatsoever, I believe, with Celtic.

2          So my concern is the case law on this, there's quite a

3  bit of Florida law that discusses this.  But we need to have

4  evincing in the document primary and direct benefit for the

10:27  5  third-party beneficiary to claim the whole water, and that's

6  under 2016 and 17.

7          The '18 and '19's, I mean, the plain languages

8  eliminate its possibility.  So I want to address this because

9  that claim, again, to me is fatally flawed.  I don't know that

10:27 10  I can get around such plain language, and there's quite a bit.

11          I will cite, you know, the Foundation Health case that

12  was cited along with the Spread Enterprises case.  That's

13  922 So.2d.355.  The Wolf vs. Celebrity Cruises case from the

14  Southern District affirmed by the 11th in 2017 at

10:27 15  683 Fed.Appx. 786 is probably the cleanest one that explains

16  that.  A third-party beneficiary claim there was dismissed with

17  prejudice and affirmed because the contract at issue contained

18  language that "the agreement shall not be deemed to provide

19  third persons with any remedy, claim, right, or action, or

10:28 20  other right."  And the express terms would not allow any intent

21  to primarily directly benefit the plaintiff.

22          So, you know, when you have those line of cases, and

23  you have the language I've seen, I do not believe there's any

24  way that I could circumvent -- in fact, I would be asked to

10:28 25  rewrite the plain language of the contract.

1          Can you address the third-party beneficiary claims to

2    that regard, please?

3          **MR. PEGG:**  Judge, this is Allen Pegg.  I'm not sure;

4    was that to me or Mr. Fisher?

10:28  5          **THE COURT:**  Yeah.  You, Mr. Pegg, and I'll get a

6    response, but I just want to make sure I'm not missing anything

7    because I don't think an amendment can cure this problem.

8          **MR. PEGG:**  No.  I agree with you wholeheartedly, Your

9    Honor.  Insurance policies -- there's a lot of law that says

10:28  10   insurance policies are construed like contracts, and contracts

11   are based on their plain language.

12          The '18 and '19 policies, as Your Honor noted,

13   couldn't be any clearer.  They expressly disavow any purported

14   right of a third-party beneficiary to the claim, essentially

10:29  15   meaning that Celtic and its insureds, its subscribers, have

16   contractually confirmed, expressly confirmed, that neither of

17   them, being the contracting parties, had an intent to benefit

18   any third party, let alone to primarily and directly benefit a

19   third party.

10:29  20          And then turning to the '16 and '17, the earlier

21   policies, again, although they don't have the express disavow

22   provisions, they, likewise, do not have any provisions that

23   could be reasonably construed to show that the contracting

24   parties had an intent to expressly and directly benefit the

10:29  25   third parties such as the plaintiff.

1     At most, Your Honor, I would submit that it is a

2 tangential incidental benefit -- well, you may get a -- you may

3 have a right to receive the benefits that we, the contracting

4 parties, have determined to be due and payable, but that is an

10:29  5 incidental benefit, at best, which is insufficient under the

6 Florida law that we have cited to state a claim as a

7 third-party beneficiary.

8     **THE COURT:**  Well, because the problem is, even though

9 you may be almost an unintended beneficiary, I believe the

10:30  10 Florida case law addressed this in other matters is pretty

11 strict in that it has to be pled and evidenced as a direct

12 beneficiary.  I mean, you have to be intended, and without that

13 we have a problem.

14     I mean, Foundation Health says it, that unless the

10:30  15 language of the specific contracts properly provides otherwise,

16 plaintiff status as a non-participating provider does not

17 preclude from establishing, as a matter of law, the intent

18 element in a breach of third-party beneficiary, but it says

19 that, "to the extent there are other clauses in the individual

10:30  20 HMO contracts and it's a contrary intent, this is a

21 determination that we'll leave to the trial court."

22     So I know that case was kind of used in an attempt to

23 support it, but I think the actual opposite is true.  We

24 definitely have to look at the contractual language of the

10:31  25 specific member contracts.

1          And so Mr. Fisher, what do you think about that

2    particular issue?  Because I'm very much concerned that the

3    case law in Florida has kind of given us the guard rails for

4    finding third-party beneficiaries.

10:31  5          I understand some of these parties may have been

6    benefiting, but without explicit language -- in fact, language

7    eliminating that ability in '18 and '19, I mean, it's on point.

8    There I think it's a closed case, but even on the '16 and

9    '17's, it doesn't seem that I have sufficient intent there

10:31 10   under the case law to support it.

11         Did you want to address that?  Because I don't know

12   how you expect to get me around the plain language of the

13   insurance contract.

14         **MR. FISHER:**  Yes, Your Honor.  The third-party

10:31 15   beneficiary contention is, as set forth in Foundation Health

16   and also citing Allstate vs. Cacalamas (ph.) where service

17   providers have recognized the third-party beneficiaries of

18   insurance contracts.  And we also cite the Vencor case for that

19   same proposition.

10:32 20         Basically, what the case law in Florida has said is

21   that insurance claims are different than other claims, and

22   there's an implied contention that the purpose was to benefit

23   the provider, and that's what Foundation said.

24         On the 2018 and 2019, I agree, it's a more difficult

10:32 25   argument.  However, based on 627.64194, it basically creates a

1  third-party beneficiary concept.

2       THE COURT:  Okay.  Now, let me ask you --

3       MR. FISHER:  I would also --

4       THE COURT:  I'm sorry, Mr. Fisher.  Go ahead,

10:32  5  Mr. Fisher.  Go ahead.

6       MR. FISHER:  I just wanted to raise one more thing on

7  the declaratory judgment issue.

8       THE COURT:  Yes?  Go ahead.

9       MR. FISHER:  Where in -- on a diversity case here

10:32  10  applying Florida law, and in the cases that we've cited all

11  involving an interpretation of the usual-and-customary statute,

12  they all allow for declaratory judgment to determine just that.

13       Because what we're looking to find, Your Honor, is --

14  as I said, there are a number of cases that have defined usual

10:33  15  and customary and difference -- and have applied different

16  rules.

17       We're not expecting you to come up and say 83.7

18  percent of Boca Raton's charges are usual and customary, but

19  what we are looking for is a declaration saying that "this is

10:33  20  the requirements to what a usual-and-customary charge in the

21  community is" because the term "charge" has been defined by

22  different courts to mean different things.

23       Most of the case law says charges, simply that, what

24  other hospitals in the community charge.  There's one case that

10:34  25  says "it's not only what they charge; it's what they charge and

1   what is being reimbursed."  That's what we're looking for

2   clarity on so that we can then determine what criteria to use.

3   We're not looking for you to supply us -- I'd love you to, but

4   it's never going to happen, and we understand that, that you're

10:34   5   ever going to supply us with a formula.

6        But what we do need is a determination of what that

7   statute means because the term "charges" I take it to mean --

8   because it says "reimbursement is."  I take it to mean it's

9   what others charge, and there is case law to that effect.

10:34   10       However, there's also case law to the effect that it's

11   what others charge and what's accepted.  And so that's why

12   there's confusion, and we need a determination of what a

13   statute means.

14       **THE COURT:**  Well, I think -- look, I understand

10:34   15   philosophically where you're coming from.  I think the only

16   issue I have, as I stated earlier, two points.  One, I still

17   firmly believe that the breach of contract will partially, if

18   not fully, resolve that concern, if only because there will be

19   guidance given if a breach is ultimately found on how

10:35   20   reimbursement is done and how you compare customary charges.

21       So on the one end I do think there's a duplicative

22   concern there.  On the other end, it's not uncommon for us to

23   have numerous cases that interpret something differently.  How

24   we apply them and how they'll be applied in this case remains

10:35   25   to be seen.

1          But the reality is in so many instances we have where

2     the cases have gone in different directions and interpreting a

3     statute, and I can only say that I'll be guided by whatever the

4     plain language of that statute is in trying to determine how

10:35   5     reimbursement is properly effectuated and what you're allowed

6     to look at.

7          To me, I don't think -- in a way you're almost working

8     backwards.  What you're saying is, "Well, we believe the

9     statute is ambiguous because it's generated several cases of

10:36  10     different kinds interpretation."

11          And my retort to that will be, well, I'm going to look

12     at the plain language of the statute to begin with.  If the

13     other cases have got it wrong, we'll soon find out.  But I

14     don't know that I'm going to engineer an ambiguity so as to

10:36  15     improperly utilize the declaratory judgment act.  That's where

16     my concern is.

17          Now, let me finish with the last point, so I can

18     conclude the hearing and allow you, Mr. Fisher, to enjoy the

19     rest of your vacation here.  I will say that I'm very glad

10:36  20     you've had a great signal the whole way through because I

21     didn't want this to break down while you were on your boat.

22     The important thing is --

23          **MR. FISHER:**  Judge, I've been watching -- there's a

24     signal control thing, and I've been watching.

10:36  25          **THE COURT:**  You've been clearer than someone who is

1   down the street on a land line, so I'm very happy about that.

2         I will say that the last issue I wanted to talk about,

3   I think, may be more of a pleading deficiency than anything

4   else.  And this is the issue of Assignment of Benefits.  Unlike

10:36  5   the third-party beneficiary concern, which I think has a bigger

6   hurdle based on the plain language of the contract, there I

7   think -- and I'm sure Mr. Pegg will correct me if I'm wrong --

8   is a pleading standard where Celtic apparently has the ability

9   to bless these assignments.

10:37  10        And so one of the things that they have pointed out is

11  they don't believe that the assignments have been properly

12  pled.  I think that there's no question that 627.638 requires

13  -- only requires that Celtic recognize the assignment of

14  limited rights to receive the direct payment of patient

10:37  15  benefits.  But at the end of the day, their right to receive

16  payment is really what's at issue in the statute.

17        And I think that Celtic, in their motion, Mr. Fisher,

18  is -- really understands that there can be a valid assignment.

19  The problem is they need to see these elements pled in the

10:37  20  assignments.  And I think there have been -- I don't want to

21  say conclusory pled; I just don't know that we have covered

22  those elements in the pleadings.  It seems that we just haven't

23  discussed them.  And I don't know that you can't satisfy that

24  if it is pled.

10:38  25        I think that the current iteration of the complaint

1  doesn't really -- number one, it doesn't, as an initial matter,

2  identify which ones have been assigned.  So that kind of goes

3  back to my earlier point in the spreadsheet with the emergency

4  services.  Some clarity there would really help.  And we don't

10:38  5  really identify how there's been a breach in some of that.

6          I mean, to me, there's a whole section on how you can

7  deem it a reimbursable and payable assignment.  There has to be

8  this approval process.  And I think that's found in the 2016

9  and 2017 member contracts that say that a member's benefits can

10:38  10  only be assigned with Ambetter's own approval.

11          So whether it's approved or not, I think we need to

12  have some allegation of that, that says that these requirements

13  that are found, I believe, in exhibit 1 at page 55 and 56, and

14  exhibit 2 at 61 and 62.  And I think we see that also in the

10:39  15  2018 and 2019 member contracts that require that specific

16  authorization.

17          I think if we had pled that, if we had explained that

18  there's been specific authorization on assignments, and those

19  assignments have been breached, we can satisfy that.  But I

10:39  20  think that's just being completely ignored or just not stated.

21          And it may be an oversight in the pleading, but I

22  think, Mr. Fisher, that that's something I want to give you a

23  chance to plead, because there can be an assignment of

24  benefits, but I just don't think that the '17, '18, '19, and

10:39  25  '16 contracts, all of them require that actual approval.  And I

1  don't know that that's been pled.

2       **MR. FISHER:**  Your Honor, two things.  Number one, at

3  the time we filed the complaint, we did not have the contracts.

4       **THE COURT:**  Okay.

10:40  5       **MR. FISHER:**  As a matter of fact, we didn't get them

6  until they filed their motion to dismiss.  So we couldn't have

7  known what they said.

8       Secondly, what we have alleged is that they have paid

9  us.  By paying us, they have accepted the assignments.

10:40  10       **THE COURT:**  I saw that.  But what do I do -- and thank

11  you for raising that; I meant to bring that up.

12       What do I do?  There's a case been cited to.  The best

13  one is Griffin versus Verizon, 641 Fed.Appx. 859, from 1116

14  that has -- obviously in the context of ERISA, but it was meant

10:40  15  by assignment clause and a rejected waiver and estoppel

16  arguments as to the enforceability.

17       Because, you're right, your main argument is, "Judge,

18  don't worry about assignment provisions because they've waived

19  them by virtue of payment."  But my concern -- this was raised

10:40  20  in page 6 of the reply brief.  It points out the fact that

21  there's been some sort of approval.

22       There's also another case that's been cited from the

23  Southern District of New York.  It's very persuasive, Mbody

24  case.  That's at 2014, Westlaw 4058321.  "That anti-assignment

10:41  25  clauses are not waived because health insurance companies

1  routinely make direct payments to healthcare providers without

2  waiving anti-assignment provisions."

3        So I'm a little concerned that the case law doesn't

4  support -- at least the 11th Circuit and elsewhere -- this kind

10:41  5  of waiver provision or waiver concept, almost an estoppel idea

6  because they've paid.

7        And I think that now that you have the contracts

8  you're in a better position to determine this, obviously.  I

9  agree with you, you were somewhat prejudiced in your last

10:41 10  iteration of the complaint.  You didn't know it was out there;

11  now you've seen it.

12        And perhaps you can still plead it when you figure out

13  who is properly assigned or which assignments have been

14  blessed, and you can put that in the allegations.  But I've got

10:41 15  to tell you, legally, I don't know that I feel comfortable with

16  the argument that somehow they've waived it.  And the case law

17  doesn't seem to support that.  I don't know if you have a reply

18  to that in particular?

19        MR. FISHER:  I do.  I have two things.  Number one,

10:42 20  ERISA is unique on the anti-assignments.

21        THE COURT:  I agree with that; it's a little unique.

22  I agree, and that's why I said the ERISA isn't the best thing,

23  but it still seems conceptually it would apply, wouldn't it?

24        MR. FISHER:  Not necessarily because ERISA, being such

10:42 25  a statutory, late-controlled situation because it goes back to

1  the whole concept of trusts and not being able to assign

2  trusts.

3        Although, there is the case where I did have the 11th

4  Circuit prove an assignment of benefit, but it wasn't on this

10:42  5  issue, but it was a similar issue.  It's Kegel versus Theater

6  (ph.).  I don't know that I cited it in this case, where I

7  believe they allowed an assignment, and I can cite that case to

8  the Court.

9        The second thing is I believe that 627.638 gives a

10:42  10  statutory right to be paid because it says "shall pay".  It

11  would have no meaning and would be of no use if we couldn't

12  then enforce that statute.

13        **THE COURT:**  Okay.  Let me hear a brief reply on this

14  before we conclude the hearing.  This is the last count that we

10:43  15  have at issue.  Mr. Pegg, what say you on the assignment?

16        **MR. PEGG:**  Sure, Judge, a couple of things.  One, I

17  don't think that the ERISA cases are off point at all in the

18  context of the ERISA analysis that they're still doing of

19  looking at the terms of the ERISA-governed insurance policies

10:43  20  and reading them and saying, "look, if it's got an

21  anti-assignment provision, enforceable."  So I don't think the

22  fact that it's in the statutory context or arena of ERISA makes

23  it any less persuasive.

24        Second, as Your Honor noted, there's whole slew of

10:43  25  cases that say that an insurance company doesn't waive its

1   right to abide by and enforce its assignment or anti-assignment

2   provisions by paying.  And the reason for that is it's fairly

3   straightforward.

4       If the Florida legislature has said, "Look, if a

10:44   5   member has assigned his or her right to receive payment through

6   a non-participating provider, the insurance company has to

7   respect that right."

8       If we could then not -- if we waived our contractual

9   rights by complying with the statute, the insurance companies

10:44  10   would essentially -- at least in Florida -- always be on the

11   horns of dilemma.  Do I comply with the statute, or do I

12   enforce my contractual rights?

13       So that's why the legislature has said, you have to

14   abide by, even if you have an anti-assignment provision, a very

10:44  15   narrow issue, and that is that your member has assigned his or

16   her rights to the money, to the actual check, to the remittent,

17   to a non-participating provider, you have to pay that

18   non-participating provider.  And if we step that, that makes

19   all the sense in the world.

10:45  20       Let's say I go and I get treatment from a podiatrist

21   who's not in my network, and the podiatrist charges $2,000, and

22   the insurance company pays me -- even though the podiatrist

23   required me to sign an assignment agreement -- I can -- the

24   providers are in a very difficult situation there because I can

10:45  25   keep the check.  And the provider then is forced -- I've got

1   the money that the insurance company paid, and the podiatrist

2   is out the $2,000.

3        So the legislature said, "Look, if you've got an

4   assignment provision, you have a right to receive payment

10:45   5   directly, and that's it."  So it's not -- it doesn't blow open

6   the anti-assignment provision and allow a provider now in a

7   non-participating context to pursue additional benefits.

8        And I hear what Your Honor is saying about maybe they

9   can plead a wrap-up with this.  Maybe they can plead plausible

10:45   10   facts to show that Ambetter approved some of these assignments.

11        But I would submit, Your Honor -- and we may come back

12   on a motion to dismiss if they try to do that -- that under all

13   of the plans, 2016 through 2019, as we pointed out in our

14   motion, the only thing that's allowed to be assigned, at best,

10:46   15   is the payment of benefits that we, Ambetter, have, quote,

16   "determined to be due and payable."

17        So whatever we think that our member is entitled to in

18   terms of benefits under the plan that can be assigned, that

19   check for $2,000, in my podiatrist example, that does not give

10:46   20   a provider a right to sue for additional benefits that the

21   provider thinks should have been paid.  So I think the

22   assignment of benefits claim is still suspect.

23        **THE COURT:**  Well, here's -- no, I understand that.  I

24   think part of it is, I think, because the grounds for the

10:46   25   motion to dismiss also focus primarily on the approval of the

1  assignment argument and the fact that Mr. Fisher was without

2  those contracts that he has the ability to make that

3  determination now that he has more information.

4       And obviously, we have used this time wisely to flush

10:47  5  out the concerns.  Obviously, Mr. Fisher knows what may be

6  coming if he seeks to advance a theory on the assignment that

7  you believe is still flawed because the payment of benefits is

8  all that's been assigned.

9       And if that becomes a grounds for a motion to dismiss,

10:47  10  so be it, but I think at this juncture, it would be

11  inappropriate for me to take care of that claim with prejudice

12  because he didn't have the benefit -- and I think there could

13  be a way to plead it that would satisfy Iqbal and give us

14  enough of a foundation for it.  If legally it's insufficient

10:47  15  because of the nature of the benefits, then we'll deal with it

16  on a motion to dismiss.

17       Here is what the Court is going to go ahead and do.

18  I'll be entering a brief order by the conclusion of business

19  today.  It will be granting the motion to dismiss without

10:47  20  prejudice and with leave to amend as to counts 1 and counts 2.

21       I do believe that count 1, without a doubt, can be

22  amended and corrected.  I want to give Mr. Fisher the chance to

23  do the same with count 2 now that he's in possession of the

24  contract based on the grounds raised in the motion.

10:48  25       However, my order will be dismissing with prejudice

1  the third-party beneficiary claim which I do not believe can be

2  remedied based upon the needs that I've cited on the record,

3  and we will put a string cite in our order, so that it may be

4  clear which ones I'm specifically relying on in addition to

10:48  5  what I've stated on the record.

6      At the end of the day, I think that there is no set of

7  facts given the plain language of the contracts and Florida law

8  requiring the direct beneficiary analysis that would allow a

9  third-party beneficiary theory to survive.

10:48  10      Similar to that, I'm going to be dismissing with

11  prejudice the declaratory judgment count which I believe is not

12  the proper use of the declaratory action in this circumstance,

13  not to mention the fact that the breach-of-contract action

14  already covers all the concerns that are being raised.

10:48  15      So it will be essentially a granting but with leave to

16  amend to correct those two counts.  Cognizant of Mr. Fisher's

17  current travels, I will give him ample time when he returns in

18  October, so I will give him about two weeks or so after his

19  return to make these necessary amendments.  That way he comes

10:49  20  back, and he can survey the landscape and decide whether or an

21  assignment claim can survive because he's going to need a

22  chance to look at those contracts.

23      So I will make that accommodation for you.  So

24  Mr. Fisher, you don't have to worry about it while you're

10:49  25  traveling.  But at this point, the Court feels strongly that we

1  have limited the issues, and we focus on the prevailing ones

2  and what's most important.

3          And I want to give Mr. Fisher a chance to beef up some

4  of these claims.  So to me, the number one claim that will

10:49  5  survive if pled properly, will be claim one.  I think there's a

6  legitimate breach of contract claim here.  Let's see what

7  happens when he comes back, if he comes back with the

8  assignment claim.  But I think a minimal enhancement of the

9  factual basis on count one will allow that to survive a motion

10:49 10  to dismiss.

11          I don't want to take anyone's time, and I have a

12  calendar call that's raring to go.  So I will thank you guys

13  again for getting on the line.  Look for that order to be

14  entered by the end of today.  Thank you both for your briefing

10:50 15  and for getting on the line with short notice.  The Court

16  appreciates it.

17          We're trying to clean up the docket and expedite

18  things, and I know you guys have been waiting patiently for

19  this to be ruled on.  I didn't want to waste any more time.  I

10:50 20  wanted to advance the ball.  So I do thank you guys for getting

21  on the line.  Okay?

22          **MR. PEGG:**  We appreciate it.  Thank you very much,

23  Your Honor.

24          **MR. FISHER:**  (Inaud.)

10:50 25          **THE COURT:**  You got it, guys.  We'll be in touch.

 1  Have a great rest of your day.

 2        MR. FISHER:  Thank you, Judge.

 3        MR. PEGG:  Thank you.  Enjoy your trip back.

 4        MR. FISHER:  Thanks.

10:50  5

 6

 7        (Thereupon, the above hearing was concluded.)

 8

 9                    *         *         *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1       **C E R T I F I C A T E**

2

3           I hereby certify that the foregoing is an accurate

4   transcription of the proceedings in the above-entitled matter.

5

7       10/09/2019       _____

8    DATE COMPLETED          GIZELLA BAAN-PROULX, RPR, FCRR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## #

**#303** [1] - 1:13

## $

**$2,000** [2] - 29:21, 30:2, 30:19

## '

**'16** [3] - 18:20, 20:8, 25:25
**'17** [2] - 18:20, 25:24
**'18** [4] - 17:7, 18:12, 20:7, 25:24
**'19** [3] - 18:12, 20:7, 25:24

## 1

**1** [3] - 25:13, 31:20, 31:21
**10** [2] - 1:5, 6:6
**10/09/2019** [1] - 35:7
**1116** [1] - 26:13
**11th** [4] - 11:23, 17:14, 27:4, 28:3
**17** [1] - 17:6
**17's** [1] - 20:9
**1809994** [1] - 12:1
**19's** [1] - 17:7
**19-80650** [1] - 2:5
**19-CV-80650-RAR** [1] - 1:2

## 2

**2** [5] - 3:25, 6:5, 25:14, 31:20, 31:23
**2009** [1] - 12:1
**2010** [1] - 12:8
**2014** [1] - 26:24
**2016** [4] - 16:22, 17:6, 25:8, 30:13
**2017** [3] - 16:22, 17:14, 25:9
**2018** [3] - 16:12, 20:24, 25:15
**2019** [5] - 1:5, 16:12, 20:24, 25:15, 30:13
**2510662** [1] - 12:8
**27th** [1] - 1:17

## 3

**305** [2] - 1:18, 1:23
**32082** [1] - 1:14
**33128** [1] - 1:22
**33131** [1] - 1:18

## 4

**400** [1] - 1:22
**4058321** [1] - 26:24
**459-6641** [1] - 1:18

## 5

**523-5634** [1] - 1:23
**55** [1] - 25:13
**56** [1] - 25:13
**561** [1] - 1:14

## 6

**6** [1] - 26:20
**600** [1] - 1:17
**61** [1] - 25:14
**62** [1] - 25:14
**627.638** [2] - 24:12, 28:9
**627.641.94(1)(a** [1] - 4:1
**627.64194** [3] - 3:25, 8:22, 20:25
**641** [1] - 26:13
**683** [1] - 17:15

## 7

**743-0745** [1] - 1:14
**786** [1] - 17:15

## 8

**8** [1] - 11:18
**818** [1] - 1:13
**83.7** [1] - 21:17
**859** [1] - 26:13
**8th** [1] - 1:22

## 9

**922** [1] - 17:13

## A

**A1A** [1] - 1:13
**abide** [2] - 29:1, 29:14
**ability** [3] - 20:7, 24:8, 31:2
**able** [2] - 4:25, 28:1
**above-entitled** [1] - 35:4
**accepted** [2] - 22:11, 26:9
**accommodation** [1] - 32:23
**account** [2] - 3:21, 5:4
**accurate** [1] - 35:3
**act** [7] - 10:22, 12:6, 12:14, 12:17, 15:16, 16:4, 23:15
**action** [11] - 4:8, 8:11, 9:16, 9:23, 12:4, 12:23, 14:19, 15:7, 17:19, 32:12, 32:13
**actions** [2] - 10:25, 12:9
**acts** [1] - 11:1
**actual** [3] - 19:23, 25:25, 29:16
**addition** [2] - 7:9, 32:4
**additional** [4] - 9:14, 12:12, 30:7, 30:20
**address** [6] - 4:7, 4:14, 16:14, 17:8, 18:1, 20:11

**addressed** [1] - 19:10
**adequate** [1] - 12:10
**adequately** [2] - 4:20, 12:5
**admitted** [1] - 9:11
**advance** [2] - 31:6, 33:20
**affirmed** [2] - 17:14, 17:17
**agree** [13] - 5:19, 9:21, 11:5, 13:14, 14:4, 14:16, 15:8, 16:1, 18:8, 20:24, 27:9, 27:21, 27:22
**agreement** [2] - 17:18, 29:23
**ahead** [8] - 3:2, 5:10, 7:16, 21:4, 21:5, 21:8, 31:17
**ALAN** [1] - 1:12
**Alan** [2] - 1:13, 2:10
**allegation** [3] - 5:17, 9:7, 25:12
**allegations** [3] - 4:11, 5:22, 27:14
**allege** [1] - 7:3
**alleged** [4] - 5:7, 6:23, 12:3, 26:8
**alleging** [1] - 5:13
**Allen** [2] - 2:13, 18:3
**ALLEN** [1] - 1:16
**allen.pegg@hoganlovells. com** [1] - 1:19
**allow** [7] - 7:14, 17:20, 21:12, 23:18, 30:6, 32:8, 33:9
**allowed** [3] - 23:5, 28:7, 30:14
**allowing** [1] - 4:16
**allows** [1] - 14:11
**Allstate** [1] - 20:16
**almost** [5] - 4:18, 11:8, 19:9, 23:7, 27:5
**alone** [1] - 18:18
**alternative** [1] - 11:3
**Ambetter** [4] - 2:7, 16:25, 30:10, 30:15
**Ambetter's** [1] - 25:10
**ambiguity** [4] - 10:25, 11:4, 15:24, 23:14
**ambiguous** [3] - 14:9, 14:21, 23:9
**amend** [4] - 4:5, 5:5, 31:20, 32:16
**amended** [1] - 31:22
**amendment** [3] - 7:18, 10:18, 18:7
**amendments** [1] - 32:19
**amfpalegal@aol.com** [1] - 1:15
**amounts** [2] - 8:5, 15:19
**ample** [1] - 32:17
**analysis** [2] - 28:18, 32:8
**analyze** [2] - 4:3, 14:22
**answer** [1] - 6:21
**anti** [7] - 26:24, 27:2, 27:20,

28:21, 29:1, 29:14, 30:6
**anti-assignment** [6] - 26:24, 27:2, 28:21, 29:1, 29:14, 30:6
**anti-assignments** [1] - 27:20
**anticipating** [1] - 16:25
**appear** [1] - 4:16
**appearances** [1] - 2:4
**appearing** [1] - 2:8
**applied** [4] - 11:2, 11:9, 21:15, 22:24
**apply** [2] - 22:24, 27:23
**applying** [1] - 21:10
**appreciate** [3] - 2:17, 4:15, 33:22
**appreciates** [1] - 33:16
**approval** [5] - 25:8, 25:10, 25:25, 26:21, 30:25
**approved** [2] - 25:11, 30:10
**arena** [1] - 28:22
**argument** [4] - 20:25, 26:17, 27:16, 31:1
**arguments** [2] - 3:19, 26:16
**articulate** [1] - 9:2
**articulated** [1] - 16:2
**assign** [1] - 28:1
**assigned** [8] - 25:2, 25:10, 27:13, 29:5, 29:15, 30:14, 30:18, 31:8
**Assignment** [1] - 24:4
**assignment** [23] - 24:13, 24:18, 25:7, 25:23, 26:15, 26:18, 26:24, 27:2, 28:4, 28:7, 28:15, 28:21, 29:1, 29:14, 29:23, 30:4, 30:6, 30:22, 31:1, 31:6, 32:21, 33:8
**assignments** [9] - 24:9, 24:11, 24:20, 25:18, 25:19, 26:9, 27:13, 27:20, 30:10
**assume** [2] - 14:15, 14:18
**attached** [1] - 8:3
**attempt** [1] - 19:22
**authorization** [2] - 25:16, 25:18
**Avenue** [2] - 1:17, 1:22
**average** [1] - 13:2
**aware** [1] - 2:20

## B

**BAAN** [2] - 1:21, 35:8
**BAAN-PROULX** [2] - 1:21, 35:8
**backwards** [2] - 10:19, 23:8
**ball** [2] - 6:6, 33:20
**base** [2] - 7:12, 11:15
**based** [5] - 18:11, 20:25, 24:6, 31:24, 32:2
**basis** [2] - 13:5, 33:9

**BEACH** [1] - 1:2
**Beach** [1] - 1:14
**becomes** [1] - 31:9
**beef** [1] - 33:3
**BEFORE** [1] - 1:9
**begin** [2] - 3:11, 23:12
**behalf** [4] - 2:8, 2:11, 2:12, 2:14
**belabor** [1] - 16:6
**belabored** [1] - 3:6
**believes** [1] - 6:13
**beneficial** [1] - 10:2
**beneficiaries** [2] - 20:4, 20:17
**beneficiary** [17] - 16:10, 16:15, 16:21, 17:5, 17:16, 18:1, 18:14, 19:7, 19:9, 19:12, 19:18, 20:15, 21:1, 24:5, 32:1, 32:8, 32:9
**benefit** [12] - 7:15, 16:24, 17:4, 17:21, 18:17, 18:18, 18:24, 19:2, 19:5, 20:22, 28:4, 31:12
**benefiting** [1] - 20:6
**Benefits** [1] - 24:4
**benefits** [11] - 19:3, 24:15, 25:9, 25:24, 30:7, 30:15, 30:18, 30:20, 30:22, 31:7, 31:15
**best** [6] - 3:1, 3:20, 19:5, 26:12, 27:22, 30:14
**better** [2] - 15:2, 27:8
**bigger** [2] - 8:11, 24:5
**billing** [1] - 7:11
**bit** [6] - 3:7, 6:6, 12:15, 16:9, 17:3, 17:10
**bless** [1] - 24:9
**blessed** [1] - 27:14
**blow** [1] - 30:5
**boat** [1] - 23:21
**BOCA** [2] - 1:4, 1:13
**Boca** [6] - 2:5, 2:6, 8:22, 13:8, 15:1, 21:18
**bottom** [1] - 10:24
**breach** [11] - 11:3, 11:6, 11:18, 12:18, 14:16, 19:18, 22:17, 22:19, 25:5, 32:13, 33:6
**breach-of-contract** [2] - 12:18, 32:13
**breached** [1] - 25:19
**breaches** [2] - 12:2, 13:20
**break** [1] - 23:21
**breakdown** [1] - 6:21
**breathe** [1] - 3:4
**Brickell** [1] - 1:17
**brief** [4] - 9:4, 26:20, 28:13, 31:18
**briefed** [1] - 2:25
**briefing** [1] - 33:14

**briefly** [1] - 3:2
**bring** [1] - 26:11
**broken** [1] - 8:14
**business** [2] - 2:7, 31:18
**BY** [1] - 1:21

## C

**Cacalamas** [1] - 20:16
**calendar** [1] - 33:12
**care** [2] - 5:8, 31:11
**case** [41] - 2:5, 3:2, 3:4, 7:1, 7:13, 9:5, 10:9, 10:15, 10:23, 11:23, 11:24, 11:25, 12:25, 13:1, 13:3, 13:24, 17:2, 17:11, 17:12, 17:13, 19:10, 19:22, 20:3, 20:8, 20:10, 20:18, 20:20, 21:9, 21:23, 21:24, 22:9, 22:10, 22:24, 26:12, 26:22, 26:24, 27:3, 27:16, 28:3, 28:6, 28:7
**CASE** [1] - 1:2
**cases** [13] - 2:22, 13:25, 14:2, 16:2, 17:22, 21:10, 21:14, 22:23, 23:2, 23:9, 23:13, 28:17, 28:25
**causes** [1] - 4:8
**celebrity** [1] - 17:13
**cell** [2] - 4:16, 4:18
**Celtic** [8] - 2:6, 2:14, 6:13, 17:1, 18:15, 24:8, 24:13, 24:17
**CELTIC** [2] - 1:6, 1:16
**certainly** [1] - 4:15
**certify** [1] - 35:3
**chance** [6] - 3:8, 7:20, 25:23, 31:22, 32:22, 33:3
**charge** [11] - 5:16, 7:4, 7:6, 15:2, 21:20, 21:21, 21:24, 21:25, 22:9, 22:11
**charges** [26] - 4:13, 5:14, 5:18, 5:21, 5:23, 6:4, 6:10, 6:13, 6:24, 6:25, 7:3, 7:11, 10:11, 11:2, 11:9, 12:22, 13:2, 13:4, 14:4, 14:11, 14:22, 21:18, 21:23, 22:7, 22:20, 29:21
**check** [3] - 29:16, 29:25, 30:19
**choice** [1] - 9:9
**chooses** [1] - 9:15
**Circuit** [3] - 11:23, 27:4, 28:4
**circumstance** [1] - 32:12
**circumvent** [1] - 17:24
**cite** [4] - 17:11, 20:18, 28:7, 32:3
**cited** [8] - 11:24, 17:12, 19:6, 21:10, 26:12, 26:22, 28:6, 32:2

**citing** [1] - 20:16
**claim** [20] - 5:2, 5:3, 8:20, 12:18, 15:12, 15:13, 17:5, 17:9, 17:16, 17:19, 18:14, 19:6, 30:22, 31:11, 32:1, 32:21, 33:4, 33:5, 33:6, 33:8
**claims** [13] - 3:16, 3:22, 4:3, 9:3, 10:3, 13:7, 15:16, 16:11, 16:12, 18:1, 20:21, 33:4
**clarify** [1] - 11:1
**clarity** [3] - 3:15, 22:2, 25:4
**clause** [1] - 26:15
**clauses** [2] - 19:19, 26:25
**clean** [1] - 33:17
**cleaner** [1] - 8:15
**cleanest** [1] - 17:15
**clear** [1] - 32:4
**clearer** [3] - 5:5, 18:13, 23:25
**closed** [1] - 20:8
**cognizant** [2] - 5:25, 32:16
**colleagues** [1] - 2:22
**comfortable** [1] - 27:15
**coming** [4] - 12:19, 13:10, 22:15, 31:6
**committed** [1] - 12:3
**community** [5] - 5:14, 5:16, 5:18, 6:14, 6:24, 7:1, 7:3, 7:4, 7:7, 7:10, 12:22, 13:3, 21:21, 21:24
**Community** [1] - 2:6
**companies** [2] - 26:25, 29:9
**Company** [1] - 2:7
**company** [4] - 28:25, 29:6, 29:22, 30:1
**COMPANY** [2] - 1:6, 1:17
**comparable** [1] - 14:4
**comparators** [4] - 7:17, 7:21, 8:6, 11:13
**compare** [1] - 22:20
**compared** [2] - 8:16, 10:3
**complaint** [9] - 3:10, 5:25, 6:16, 9:6, 9:15, 12:23, 24:25, 26:3, 27:10
**COMPLETED** [1] - 35:8
**completely** [2] - 15:8, 25:20
**comply** [1] - 29:11
**complying** [1] - 29:9
**conceding** [1] - 8:10
**concept** [2] - 21:1, 27:5, 28:1
**conceptually** [1] - 27:23
**concern** [13] - 4:8, 5:21, 6:11, 8:17, 10:21, 13:19, 14:19, 17:2, 22:18, 22:22, 23:16, 24:5, 26:19
**concerned** [9] - 3:15, 4:16, 4:19, 10:18, 12:17, 14:15, 15:6, 20:2, 27:3
**concerns** [5] - 3:9, 11:22,

14:17, 31:5, 32:14
**conclude** [2] - 23:18, 28:14
**concluded** [1] - 34:7
**conclusion** [1] - 31:18
**conclusory** [2] - 4:11, 24:21
**confess** [2] - 9:22, 11:10
**confirmed** [2] - 18:16
**confusion** [1] - 22:12
**consider** [1] - 13:22
**constituted** [1] - 6:17
**construction** [1] - 15:23
**construed** [4] - 15:11, 16:20, 18:10, 18:23
**construing** [2] - 15:10
**contained** [1] - 17:17
**contention** [3] - 4:23, 20:15, 20:22
**context** [5] - 15:11, 26:14, 28:18, 28:22, 30:7
**contract** [18] - 11:4, 11:6, 11:18, 12:3, 12:5, 12:18, 14:16, 16:16, 16:20, 17:1, 17:17, 17:25, 20:13, 22:17, 24:6, 31:24, 32:13, 33:6
**contracting** [3] - 18:17, 18:23, 19:3
**contracts** [15] - 16:22, 18:10, 19:15, 19:20, 19:25, 20:18, 25:9, 25:15, 25:25, 26:3, 27:7, 31:2, 32:7, 32:22
**contractual** [4] - 15:13, 19:24, 29:8, 29:12
**contractually** [1] - 18:16
**contrary** [1] - 19:20
**control** [1] - 23:24
**controlled** [1] - 27:25
**Cooke** [1] - 16:2
**correct** [4] - 5:19, 7:20, 24:7, 32:16
**corrected** [1] - 31:22
**count** [10] - 4:5, 10:20, 11:3, 16:9, 16:10, 28:14, 31:21, 31:23, 32:11, 33:9
**counts** [6] - 11:1, 15:23, 16:7, 31:20, 32:16
**couple** [1] - 28:16
**Court** [10] - 1:21, 3:1, 4:16, 4:20, 12:1, 13:6, 28:8, 31:17, 32:25, 33:15
**COURT** [25] - 1:1, 1:10, 2:3, 2:12, 2:16, 5:10, 5:19, 7:8, 9:18, 9:21, 13:14, 16:5, 18:5, 19:8, 21:2, 21:4, 21:8, 22:14, 23:25, 26:4, 26:10, 27:21, 28:13, 30:23, 33:25
**court** [5] - 2:2, 13:10, 13:18, 14:24, 19:21
**courts** [1] - 21:22
**cover** [1] - 14:16

**covered** [1] - 24:21
**covers** [1] - 32:14
**create** [2] - 16:17, 16:20
**creates** [1] - 20:25
**criteria** [1] - 22:2
**cruises** [1] - 4:17
**Cruises** [1] - 17:13
**cure** [2] - 8:17, 18:7
**cured** [1] - 8:1
**current** [3] - 3:10, 24:25, 32:17
**customary** [21] - 5:13, 5:16, 5:18, 5:21, 5:23, 6:3, 6:13, 6:24, 6:25, 7:2, 7:6, 10:4, 11:2, 12:22, 14:1, 15:18, 21:11, 21:15, 21:18, 21:20, 22:20
**cut** [2] - 5:10, 13:15

# D

**DATE** [1] - 35:8
**date** [1] - 3:21
**deal** [1] - 31:15
**dec** [1] - 15:7
**decide** [2] - 13:25, 32:20
**declaration** [1] - 21:19
**declaratory** [19] - 10:19, 10:22, 10:24, 11:14, 11:20, 12:4, 12:6, 12:13, 12:17, 12:23, 13:12, 14:19, 15:15, 16:3, 21:7, 21:12, 23:15, 32:11, 32:12
**deem** [1] - 25:7
**deemed** [1] - 17:18
**defend** [1] - 10:8
**defendant** [4] - 1:6, 2:12, 3:20, 5:1
**DEFENDANT** [1] - 1:16
**defendant's** [1] - 12:3
**defense** [7] - 4:12, 8:10, 8:13, 8:17, 10:7, 11:5, 15:20
**deficiency** [1] - 24:3
**defined** [2] - 21:14, 21:21
**definitely** [1] - 19:24
**definition** [5] - 4:1, 6:25, 12:21, 13:1, 13:13
**definitive** [1] - 14:6
**delineate** [1] - 7:23
**detail** [1] - 9:14
**detailed** [1] - 4:3
**determination** [5] - 12:21, 19:21, 22:6, 22:12, 31:3
**determinations** [1] - 12:2
**determine** [8] - 7:6, 13:11, 13:12, 15:17, 21:12, 22:2, 23:4, 27:8
**determined** [2] - 19:4, 30:16
**difference** [3] - 6:5, 11:17,

21:15
**different** [8] - 12:25, 14:14, 20:21, 21:15, 21:22, 23:2, 23:10
**differently** [1] - 22:23
**difficult** [4] - 4:12, 14:2, 20:24, 29:24
**dilemma** [1] - 29:11
**direct** [5] - 17:4, 19:11, 24:14, 27:1, 32:8
**directions** [1] - 23:2
**directly** [5] - 16:24, 17:21, 18:18, 18:24, 30:5
**disavow** [2] - 18:13, 18:21
**discovery** [2] - 7:15, 10:10
**discuss** [1] - 16:7
**discussed** [1] - 24:23
**discusses** [1] - 17:3
**dismiss** [10] - 2:23, 3:3, 4:4, 26:6, 30:12, 30:25, 31:9, 31:16, 31:19, 33:10
**dismissal** [1] - 8:20
**dismissed** [1] - 17:16
**dismissing** [2] - 31:25, 32:10
**dispute** [1] - 4:12
**DISTRICT** [3] - 1:1, 1:1, 1:10
**District** [5] - 2:21, 11:25, 16:3, 17:14, 26:23
**diversity** [1] - 21:9
**docket** [1] - 33:17
**document** [1] - 17:4
**done** [2] - 8:23, 22:20
**doubt** [1] - 31:21
**down** [3] - 8:14, 23:21, 24:1
**due** [2] - 19:4, 30:16
**duplicative** [1] - 22:21

# E

**effect** [2] - 22:9, 22:10
**effectuated** [1] - 23:5
**efficient** [1] - 3:1
**Eisenberg** [1] - 11:25
**element** [1] - 19:18
**elements** [2] - 24:19, 24:22
**eliminate** [1] - 14:24, 17:8
**eliminating** [1] - 20:7
**elsewhere** [1] - 27:4
**emergency** [11] - 3:12, 3:16, 3:23, 4:1, 4:9, 4:23, 4:24, 5:6, 5:7, 8:3, 25:3
**encountered** [1] - 6:8
**end** [9] - 3:3, 8:10, 10:17, 10:20, 22:21, 22:22, 24:15, 32:6, 33:14
**ends** [1] - 12:3
**enforce** [3] - 28:12, 29:1, 29:12
**enforceability** [1] - 26:16
**enforceable** [1] - 28:21

**engineer** [1] - 23:14
**enhancement** [1] - 33:8
**enjoy** [2] - 23:18, 34:3
**entered** [1] - 33:14
**entering** [1] - 31:18
**Enterprises** [1] - 17:12
**entertaining** [1] - 12:9
**entertainment** [1] - 5:12
**entitled** [2] - 30:17, 35:4
**ER** [8] - 4:21, 7:25, 9:3, 9:8, 9:11, 10:3, 10:15
**ERISA** [8] - 26:14, 27:20, 27:22, 27:24, 28:17, 28:18, 28:19, 28:22
**ERISA-governed** [1] - 28:19
**especially** [1] - 2:18
**ESQ** [3] - 1:12, 1:16, 1:16
**essence** [1] - 7:1
**essentially** [5] - 7:19, 13:12, 18:14, 29:10, 32:15
**establishes** [1] - 11:13
**establishing** [1] - 19:17
**estoppel** [2] - 26:15, 27:5
**evidenced** [1] - 19:11
**evincing** [1] - 17:4
**exactly** [5] - 3:16, 4:12, 7:21, 8:7, 13:11
**example** [1] - 30:19
**exclusive** [1] - 16:25
**exhibit** [4] - 3:13, 8:4, 25:13, 25:14
**existent** [1] - 4:19
**expect** [1] - 20:12
**expecting** [1] - 21:17
**expedite** [1] - 33:17
**expert** [5] - 5:15, 7:5, 10:13, 11:12, 15:16
**experts** [2] - 13:24, 14:14
**explained** [1] - 25:17
**explains** [3] - 6:17, 6:19, 17:15
**explanation** [2] - 3:17, 6:3
**explicit** [1] - 20:6
**express** [2] - 17:20, 18:21
**expressly** [3] - 18:13, 18:16, 18:24
**extensive** [1] - 6:15
**extent** [3] - 12:11, 15:13, 19:19
**eyes** [1] - 8:12

# F

**face** [1] - 14:20
**fact** [14] - 5:15, 9:8, 11:4, 11:11, 11:16, 15:16, 15:22, 17:24, 20:6, 26:5, 26:20, 28:22, 31:1, 32:13
**fact-specific** [1] - 11:11
**factors** [2] - 13:21, 14:5

**facts** [4] - 15:10, 15:11, 30:10, 32:7
**factual** [4] - 8:25, 12:2, 33:9
**factually** [2] - 9:8, 9:13
**fairly** [1] - 29:2
**falls** [1] - 15:2
**familiar** [1] - 6:9
**far** [6] - 4:21, 4:25, 5:9, 5:12, 7:5, 10:1
**fatally** [1] - 17:9
**favor** [1] - 16:17
**FCRR** [2] - 1:21, 35:8
**Fed.Appx** [2] - 17:15, 26:13
**Fernando** [1] - 12:8
**figure** [3] - 4:3, 14:10, 27:12
**filed** [2] - 26:3, 26:6
**finder** [1] - 15:16
**finish** [1] - 23:17
**firmly** [1] - 22:17
**first** [2] - 2:16, 9:1
**FISHER** [18] - 1:12, 2:10, 4:15, 5:12, 6:23, 12:20, 20:14, 21:3, 21:6, 21:9, 23:23, 26:2, 26:5, 27:19, 27:24, 33:24, 34:2, 34:4
**fisher** [16] - 2:18, 3:14, 4:7, 8:2, 10:21, 12:16, 20:1, 21:5, 23:18, 24:17, 25:22, 31:1, 31:5, 31:22, 32:24, 33:3
**Fisher** [5] - 1:13, 2:10, 10:12, 18:4, 21:4
**fisher's** [2] - 7:19, 32:16
**FL** [3] - 1:14, 1:18, 1:22
**flawed** [2] - 17:9, 31:7
**flip** [1] - 11:17
**floated** [1] - 11:7
**Floor** [2] - 1:17, 1:22
**FLORIDA** [1] - 1:1
**Florida** [11] - 3:25, 16:3, 17:3, 19:6, 19:10, 20:3, 20:20, 21:10, 29:4, 29:10, 32:7
**flush** [1] - 31:4
**focus** [2] - 30:25, 33:1
**folks** [1] - 2:24
**following** [1] - 2:2
**FOR** [2] - 1:12, 1:16
**forced** [1] - 29:25
**foregoing** [1] - 35:3
**foremost** [1] - 2:16
**forestalled** [1] - 16:12
**formerly** [1] - 2:5
**formula** [1] - 22:5
**formulaic** [1] - 8:24
**formulaically** [1] - 6:17
**forth** [1] - 20:15
**forward** [4] - 11:8, 11:15, 13:5, 13:19

**forward-looking** [1] - 11:8, 13:19
**foundation** [1] - 31:14
**Foundation** [4] - 17:11, 19:14, 20:15, 20:23
**framing** [1] - 7:10
**front** [2] - 13:6, 14:17
**full** [1] - 12:10
**fully** [2] - 2:24, 22:18
**future** [1] - 13:19

## G

**gatekeeper** [1] - 9:22
**generated** [1] - 23:9
**given** [4] - 3:7, 20:3, 22:19, 32:7
**GIZELLA** [2] - 1:21, 35:8
**gizella_baan** [1] - 1:23
**gizella_baan-proulx@flsd. uscourts.gov** [1] - 1:23
**glad** [1] - 23:19
**go-forward** [1] - 13:5
**governed** [1] - 28:19
**grant** [3] - 4:4, 12:13, 16:17
**granting** [2] - 31:19, 32:15
**great** [2] - 23:20, 34:1
**Griffin** [1] - 26:13
**Grinberg** [1] - 12:8
**grounds** [3] - 30:24, 31:9, 31:24
**guard** [1] - 20:3
**guess** [2] - 5:21, 13:15
**guidance** [1] - 22:19
**guide** [2] - 7:17, 15:1
**guided** [1] - 23:3
**guideline** [1] - 7:13
**guideposts** [1] - 10:11
**guys** [6] - 14:24, 15:1, 33:12, 33:18, 33:20, 33:25

## H

**happy** [1] - 24:1
**head** [1] - 8:19
**Health** [4] - 2:7, 17:11, 19:14, 20:15
**health** [1] - 26:25
**healthcare** [1] - 27:1
**hear** [2] - 28:13, 30:8
**HEARING** [1] - 1:8
**hearing** [5] - 3:6, 9:2, 23:18, 28:14, 34:7
**held** [1] - 2:2
**help** [1] - 25:4
**hereby** [1] - 35:3
**hereto** [1] - 8:3
**hinted** [1] - 12:12
**hit** [1] - 8:19
**HMO** [1] - 19:20

**Hogan** [2] - 1:17, 2:14
**Honor** [18] - 2:10, 2:13, 4:15, 8:19, 9:1, 9:20, 12:20, 15:9, 18:9, 18:12, 19:1, 20:14, 21:13, 26:2, 28:24, 30:8, 30:11, 33:23
**HONORABLE** [1] - 1:9
**horns** [1] - 29:11
**hospital** [3] - 7:10, 8:21, 16:18
**Hospital** [2] - 2:5, 2:6
**HOSPITAL** [2] - 1:4, 1:13
**hospitals** [8] - 7:4, 7:22, 8:4, 8:5, 8:15, 10:5, 10:14, 21:24
**hurdle** [1] - 24:6

## I

**idea** [3] - 6:9, 11:7, 27:5
**identified** [4] - 3:13, 8:3, 9:3, 9:8
**identify** [3] - 4:25, 25:2, 25:5
**identifying** [1] - 3:22
**ignored** [1] - 25:20
**II** [1] - 1:9
**implied** [1] - 20:22
**important** [2] - 23:22, 33:2
**improperly** [1] - 23:15
**inability** [1] - 16:14
**inapplicable** [1] - 7:17
**inappropriate** [1] - 31:11
**inaud** [1] - 33:24
**INC** [2] - 1:4, 1:13
**incidental** [2] - 19:2, 19:5
**inclined** [1] - 7:20
**include** [1] - 5:4
**including** [1] - 16:18
**indicating** [2] - 7:25, 8:10
**individual** [1] - 19:19
**information** [1] - 31:3
**inherit** [1] - 2:21
**initial** [1] - 25:1
**injury** [1] - 6:8
**instance** [1] - 6:4
**instances** [1] - 23:1
**instead** [1] - 13:5
**insufficient** [4] - 8:25, 15:21, 19:5, 31:14
**insufficiently** [1] - 8:12
**Insurance** [1] - 2:6
**insurance** [12] - 18:9, 18:10, 20:13, 20:18, 20:21, 26:25, 28:19, 28:25, 29:6, 29:9, 29:22, 30:1
**INSURANCE** [2] - 1:6, 1:16
**insureds** [1] - 18:15
**intelligible** [1] - 10:8
**intended** [2] - 16:16, 19:12
**intent** [7] - 16:23, 17:20,

18:17, 18:24, 19:17, 19:20, 20:9
**internet** [1] - 4:18
**interpret** [2] - 14:20, 22:23
**interpretation** [3] - 14:7, 21:11, 23:10
**interpreted** [1] - 14:13
**interpreting** [1] - 23:2
**interrupt** [1] - 2:24
**invoice** [1] - 5:3
**involving** [1] - 21:11
**Iqbal** [2] - 4:10, 31:13
**irrelevant** [1] - 10:10
**issue** [16] - 3:22, 4:13, 7:24, 13:8, 16:13, 17:17, 20:2, 21:7, 22:16, 24:2, 24:4, 24:16, 28:5, 28:15, 29:15
**issued** [1] - 5:2
**issues** [5] - 9:12, 11:21, 15:22, 33:1
**iteration** [2] - 24:25, 27:10

## J

**James** [1] - 2:15
**JAMES** [1] - 1:16
**james.vanlandingham@ hoganlovells.com** [1] - 1:19
**joined** [2] - 2:14, 2:21
**judge** [4] - 8:18, 15:8, 18:3, 23:23
**JUDGE** [1] - 1:10
**Judge** [6] - 2:3, 14:8, 16:2, 26:17, 28:16, 34:2
**judgement** [1] - 10:20, 10:22, 12:4
**judgment** [15] - 10:24, 11:14, 11:20, 12:6, 12:13, 12:17, 12:23, 13:12, 14:3, 15:16, 16:4, 21:7, 21:12, 23:15, 32:11
**juncture** [1] - 31:10
**jury** [2] - 13:23, 13:25

## K

**keep** [3] - 3:4, 13:10, 29:25
**Kegel** [1] - 28:5
**kind** [6] - 10:11, 12:11, 19:22, 20:3, 25:2, 27:4
**kinds** [1] - 23:10
**kit** [1] - 14:10
**known** [2] - 2:6, 26:7
**knows** [1] - 31:5

## L

**lack** [1] - 3:15
**laid** [1] - 8:23
**land** [1] - 24:1

**landscape** [1] - 32:20
**language** [17] - 8:24, 15:25, 16:13, 17:10, 17:18, 17:23, 17:25, 18:11, 19:15, 19:24, 20:6, 20:12, 23:4, 23:12, 24:6, 32:7
**languages** [1] - 17:7
**last** [4] - 23:17, 24:2, 27:9, 28:14
**late** [1] - 27:25
**late-controlled** [1] - 27:25
**law** [16] - 10:24, 11:16, 11:23, 11:24, 12:25, 13:1, 13:3, 17:2, 17:3, 18:9, 19:6, 19:10, 19:17, 20:3, 20:10, 20:20, 21:10, 21:23, 22:9, 22:10, 27:3, 27:16, 32:7
**least** [4] - 8:9, 9:16, 27:4, 29:10
**leave** [4] - 4:5, 19:21, 31:20, 32:15
**legally** [2] - 27:15, 31:14
**legislative** [1] - 15:25
**legislature** [3] - 29:4, 29:13, 30:3
**legitimate** [1] - 33:6
**less** [2] - 5:17, 28:23
**life** [2] - 3:4, 6:8
**likely** [1] - 9:16
**likewise** [1] - 18:22
**limited** [3] - 16:18, 24:14, 33:1
**line** [13] - 2:9, 2:14, 2:18, 7:12, 10:24, 11:15, 14:11, 15:19, 17:22, 24:1, 33:13, 33:15, 33:21
**lines** [1] - 10:6
**litigation** [1] - 6:9
**LLP** [1] - 1:17
**loathe** [1] - 2:24
**long-winded** [1] - 9:19
**look** [14] - 8:1, 9:21, 9:22, 11:23, 11:25, 13:3, 14:5, 19:24, 22:14, 23:6, 23:11, 28:20, 32:22, 33:13
**Look** [2] - 29:4, 30:3
**looking** [10] - 7:16, 11:8, 11:19, 13:2, 13:19, 21:13, 21:19, 22:1, 22:3, 28:19
**lose** [1] - 13:15
**love** [3] - 14:25, 15:3, 22:3
**Lovells** [2] - 1:17, 2:14

## M

**magic** [1] - 5:24
**main** [2] - 3:9, 26:17
**manifest** [1] - 16:23
**marching** [2] - 13:24, 14:24

**marked** [1] - 7:25
**master** [1] - 9:6
**material** [1] - 3:7
**matter** [5] - 2:22, 19:17, 25:1, 26:5, 35:4
**matters** [1] - 19:10
**Mbody** [1] - 26:23
**mean** [21] - 5:10, 5:19, 5:20, 6:2, 6:5, 7:8, 9:23, 12:8, 12:16, 13:14, 13:18, 16:13, 16:15, 17:7, 19:12, 19:14, 20:7, 21:22, 22:7, 22:8, 25:6
**meaning** [4] - 5:8, 14:21, 18:15, 28:11
**means** [3] - 4:22, 22:7, 22:13
**meant** [2] - 26:11, 26:14
**medical** [2] - 9:12, 16:19
**member** [7] - 16:22, 19:25, 25:9, 25:15, 29:5, 29:15, 30:17
**member's** [1] - 25:9
**mention** [1] - 32:13
**metrics** [1] - 14:14
**Miami** [3] - 1:18, 1:22, 1:22
**might** [1] - 7:8
**million** [2] - 6:6, 11:18
**minimal** [1] - 33:8
**minute** [1] - 14:18
**missing** [2] - 6:21, 18:6
**momentum** [1] - 3:5
**money** [2] - 29:16, 30:1
**morning** [4] - 2:3, 2:10, 2:13, 2:15
**most** [4] - 3:1, 19:1, 21:23, 33:2
**MOTION** [1] - 1:8
**motion** [14] - 3:3, 3:8, 4:4, 8:23, 24:17, 26:6, 30:12, 30:14, 30:25, 31:9, 31:16, 31:19, 31:24, 33:9
**motions** [2] - 2:21, 2:23
**move** [2] - 15:5, 16:5
**MR** [26] - 2:10, 2:13, 4:15, 5:12, 6:23, 8:18, 9:19, 12:20, 15:8, 18:3, 18:8, 20:14, 21:3, 21:6, 21:9, 23:23, 26:2, 26:5, 27:19, 27:24, 28:16, 33:22, 33:24, 34:2, 34:3, 34:4

### N

**names** [1] - 3:21
**narrow** [1] - 29:15
**nature** [2] - 14:9, 31:15
**necessarily** [2] - 8:10, 27:24
**necessary** [2] - 3:18, 32:19
**need** [12] - 4:9, 6:14, 12:21, 13:18, 14:24, 15:17, 17:3,

22:6, 22:12, 24:19, 25:11, 32:21
**needs** [1] - 32:2
**network** [6] - 8:5, 8:15, 8:21, 10:5, 10:14, 29:21
**never** [1] - 22:4
**new** [1] - 3:4
**New** [1] - 26:23
**NO** [1] - 1:2
**non** [7] - 4:19, 15:15, 19:16, 29:6, 29:17, 29:18, 30:7
**non-declaratory** [1] - 15:15
**non-existent** [1] - 4:19
**non-participating** [5] - 19:16, 29:6, 29:17, 29:18, 30:7
**North** [1] - 1:13, 1:22
**noted** [2] - 18:12, 28:24
**notice** [1] - 33:15
**Number** [1] - 4:17
**number** [11] - 2:5, 5:2, 5:3, 5:4, 13:7, 21:14, 25:1, 26:2, 27:19, 33:4
**numbers** [1] - 3:21
**numerous** [1] - 22:23

### O

**obviously** [5] - 6:13, 26:14, 27:8, 31:4, 31:5
**October** [1] - 32:18
**OF** [1] - 1:1
**office** [1] - 2:15
**oftentimes** [1] - 14:2
**older** [1] - 2:23
**one** [20] - 2:22, 4:17, 9:20, 13:11, 14:7, 16:8, 17:15, 21:6, 21:24, 22:16, 22:21, 24:10, 25:1, 26:2, 26:13, 27:19, 28:16, 33:4, 33:5, 33:9
**ones** [5] - 4:13, 5:2, 25:2, 32:4, 33:1
**open** [2] - 2:2, 30:5
**opposite** [1] - 19:23
**opposition** [1] - 9:4
**order** [6] - 15:13, 15:15, 31:18, 31:25, 32:3, 33:13
**otherwise** [2] - 15:17, 19:15
**out-of-network** [5] - 8:5, 8:15, 8:21, 10:5, 10:14
**oversight** [1] - 25:21
**own** [2] - 9:6, 25:10

### P

**page** [2] - 25:13, 26:20
**paid** [9] - 5:17, 6:13, 6:24, 15:19, 26:8, 27:6, 28:10, 30:1, 30:21
**PALM** [1] - 1:2

**parameters** [1] - 10:9
**parking** [1] - 6:6
**parroting** [1] - 8:24
**parroting-the-language-of-the-statute** [1] - 8:24
**part** [1] - 30:24
**partially** [1] - 22:17
**participating** [5] - 19:16, 29:6, 29:17, 29:18, 30:7
**particular** [4] - 2:22, 4:5, 20:2, 27:18
**parties** [5] - 14:4, 18:17, 18:24, 18:25, 19:4, 20:5
**party** [19] - 16:10, 16:15, 16:17, 16:20, 17:5, 17:16, 18:1, 18:14, 18:18, 18:19, 19:7, 19:18, 20:4, 20:14, 20:17, 21:1, 24:5, 32:1, 32:9
**past** [1] - 6:8
**patient** [3] - 3:21, 4:22, 24:14
**patiently** [1] - 33:18
**pay** [6] - 5:13, 5:23, 7:23, 8:4, 15:3, 29:17
**pay"** [1] - 28:10
**payable** [3] - 19:4, 25:7, 30:16
**paying** [2] - 26:9, 29:2
**payment** [7] - 24:14, 24:16, 26:19, 29:5, 30:4, 30:15, 31:7
**payments** [1] - 27:1
**pays** [1] - 29:22
**Pegg** [2] - 2:13, 18:3
**pegg** [6] - 7:18, 15:5, 16:8, 18:5, 24:7, 28:15
**PEGG** [10] - 1:16, 2:13, 8:18, 9:19, 15:8, 18:3, 18:8, 28:16, 33:22, 34:3
**pending** [3] - 2:21, 2:23, 3:3
**people** [1] - 9:10
**percent** [1] - 21:18
**performed** [1] - 12:5
**perhaps** [9] - 3:9, 6:2, 6:4, 7:23, 9:4, 9:10, 11:1, 14:7, 27:12
**permits** [1] - 15:4
**personal** [1] - 6:8
**persons** [1] - 17:19
**persuasive** [2] - 26:23, 28:23
**pertain** [1] - 3:16
**pertains** [1] - 4:5
**peruses** [1] - 15:9
**ph** [1] - 20:16
**ph.)** [1] - 28:6
**philosophically** [2] - 10:23, 22:15
**phone** [2] - 4:16, 4:18
**physician** [1] - 16:18

**pivot** [1] - 10:17
**plain** [11] - 14:21, 16:13, 17:7, 17:10, 17:25, 18:11, 20:12, 23:4, 23:12, 24:6, 32:7
**plaintiff** [10] - 1:4, 2:8, 2:11, 9:2, 9:15, 15:24, 16:24, 17:21, 18:25, 19:16
**PLAINTIFF** [1] - 1:12
**plaintiff's** [2] - 7:15, 9:6
**plaintiffs** [1] - 15:21
**plan** [1] - 30:18
**plans** [1] - 30:13
**plausible** [2] - 8:25, 30:9
**plead** [7] - 5:25, 8:22, 25:23, 27:12, 30:9, 31:13
**pleading** [6] - 6:15, 8:2, 9:25, 24:3, 24:8, 25:21
**pleadings** [1] - 24:22
**pled** [9] - 8:12, 19:11, 24:12, 24:19, 24:21, 24:24, 25:17, 26:1, 33:5
**podiatrist** [5] - 29:20, 29:21, 29:22, 30:1, 30:19
**point** [9] - 10:13, 14:23, 15:5, 16:6, 20:7, 23:17, 25:3, 28:17, 32:25
**pointed** [3] - 16:23, 24:10, 30:13
**points** [4] - 12:9, 15:24, 22:16, 26:20
**policies** [6] - 16:13, 18:9, 18:10, 18:12, 18:21, 28:19
**Ponte** [1] - 1:14
**position** [2] - 3:20, 27:8
**positions** [1] - 10:14
**possession** [1] - 31:23
**possibility** [2] - 8:21, 17:8
**possible** [1] - 12:2
**posts** [1] - 15:1
**practitioner** [1] - 16:19
**preclude** [1] - 19:17
**prejudice** [6] - 8:20, 17:17, 31:11, 31:20, 31:25, 32:11
**prejudiced** [1] - 27:9
**prepared** [1] - 4:4
**presented** [1] - 13:7
**pretty** [1] - 19:10
**prevail** [3] - 11:18, 15:14
**prevailing** [1] - 33:1
**prevent** [1] - 13:17
**primarily** [4] - 16:24, 17:21, 18:18, 30:25
**primary** [1] - 17:4
**problem** [7] - 11:20, 12:15, 12:20, 18:7, 19:8, 19:13, 24:19
**proceedings** [2] - 2:2, 35:4
**process** [1] - 25:8

**proper** [2] - 15:6, 32:12
**properly** [7] - 11:14, 16:4, 19:15, 23:5, 24:11, 27:13, 33:5
**proposal** [1] - 9:20
**proposed** [1] - 12:18
**proposition** [1] - 20:19
**PROULX** [2] - 1:21, 35:8
**proulx@flsd.uscourts.gov** [1] - 1:23
**prove** [1] - 28:4
**provide** [3] - 9:15, 10:15, 17:18
**provider** [10] - 16:25, 19:16, 20:23, 29:6, 29:17, 29:18, 29:25, 30:6, 30:20, 30:21
**providers** [4] - 8:16, 20:17, 27:1, 29:24
**provides** [1] - 19:15
**providing** [1] - 16:19
**provision** [6] - 13:13, 27:5, 28:21, 29:14, 30:4, 30:6
**provisions** [5] - 18:22, 26:18, 27:2, 29:2
**purported** [3] - 3:12, 3:22, 18:13
**purpose** [1] - 20:22
**purposes** [1] - 13:11
**pursue** [1] - 30:7
**put** [3] - 9:4, 27:14, 32:3

### Q

**qualifies** [1] - 3:25
**qualify** [1] - 9:8
**qualifying** [1] - 9:13
**questions** [2] - 12:5, 15:22
**quite** [4] - 3:7, 6:6, 17:2, 17:10
**quote** [1] - 30:15

### R

**rails** [1] - 20:3
**raise** [1] - 21:6
**raised** [3] - 26:19, 31:24, 32:14
**raising** [1] - 26:11
**raring** [1] - 33:12
**rates** [2] - 11:13, 15:18
**RATON** [2] - 1:4, 1:13
**Raton** [3] - 2:5, 2:6, 8:22
**Raton's** [1] - 21:18
**reading** [2] - 16:15, 28:20
**reality** [3] - 14:9, 15:3, 23:1
**really** [15] - 3:14, 7:5, 7:22, 8:6, 10:15, 12:4, 12:6, 14:4, 14:7, 16:23, 24:16, 24:18, 25:1, 25:4, 25:5
**reason** [1] - 29:2

**reasonable** [1] - 3:18
**reasonably** [1] - 18:23
**reasons** [3] - 4:17, 16:1, 16:2
**receive** [5] - 19:3, 24:14, 24:15, 29:5, 30:4
**recently** [1] - 2:20
**reception** [1] - 4:18
**recognize** [2] - 9:10, 24:13
**recognized** [1] - 20:17
**record** [3] - 2:4, 32:2, 32:5
**recover** [1] - 15:21
**regard** [2] - 6:15, 18:2
**regarding** [3] - 3:15, 12:2, 12:5
**Regional** [1] - 2:5
**reimbursable** [1] - 25:7
**reimbursed** [2] - 7:11, 22:1
**reimbursement** [5] - 10:4, 11:13, 22:8, 22:20, 23:5
**reimbursements** [1] - 13:4
**rejected** [1] - 26:15
**related** [2] - 3:18, 6:10
**relief** [5] - 11:19, 12:10, 12:13, 15:9
**relying** [1] - 32:4
**remains** [1] - 22:24
**remedied** [1] - 32:2
**remedy** [1] - 17:19
**remittent** [1] - 29:16
**reply** [6] - 3:8, 8:23, 12:12, 26:20, 27:17, 28:13
**REPORTED** [1] - 1:21
**Reporter** [1] - 1:21
**request** [1] - 15:9
**require** [4] - 5:15, 10:10, 25:15, 25:25
**required** [1] - 29:23
**requirements** [2] - 21:20, 25:12
**requires** [3] - 4:2, 24:12, 24:13
**requiring** [1] - 32:8
**resolve** [2] - 15:15, 22:18
**resolved** [1] - 15:23
**resolving** [1] - 12:4
**respect** [1] - 29:7
**respectfully** [1] - 14:17
**respond** [2] - 4:12, 4:20
**response** [5] - 3:8, 5:1, 11:7, 12:12, 18:6
**rest** [2] - 23:19, 34:1
**retort** [1] - 23:11
**return** [2] - 13:18, 32:19
**returns** [1] - 32:17
**review** [3] - 3:2, 3:8, 3:14
**rewrite** [1] - 17:25
**rights** [6] - 16:17, 16:21, 24:14, 29:9, 29:12, 29:16
**ripe** [1] - 13:8

**river** [1] - 4:17
**RODOLFO** [1] - 1:9
**room** [1] - 4:23
**routinely** [1] - 27:1
**RPR** [2] - 1:21, 35:8
**rubrics** [1] - 15:2
**RUIZ** [1] - 1:9
**Ruiz** [1] - 2:4
**rule** [2] - 3:3, 14:3
**ruled** [1] - 33:19
**rules** [1] - 21:16

### S

**satisfies** [1] - 9:25
**satisfy** [4] - 10:25, 24:23, 25:19, 31:13
**saw** [1] - 26:10
**second** [2] - 28:9, 28:24
**secondly** [1] - 26:8
**section** [1] - 25:6
**secure** [1] - 12:10
**see** [14] - 6:22, 9:5, 9:23, 9:24, 11:3, 11:4, 11:10, 11:14, 11:20, 13:17, 14:15, 24:19, 25:14, 33:6
**seeking** [3] - 8:19, 11:5, 11:17
**seeks** [1] - 31:6
**seem** [4] - 7:8, 16:12, 20:9, 27:17
**sense** [2] - 8:12, 29:19
**sensible** [1] - 9:20
**September** [1] - 1:5
**service** [2] - 3:21, 20:16
**services** [17] - 3:12, 3:16, 3:17, 3:23, 4:2, 4:9, 4:24, 5:7, 5:8, 5:14, 7:23, 7:24, 8:2, 10:15, 11:12, 16:19, 25:4
**set** [4] - 11:15, 14:5, 20:15, 32:6
**several** [1] - 23:9
**shall** [3] - 16:20, 17:18, 28:10
**share** [1] - 3:9
**sharing** [1] - 7:22
**short** [1] - 33:15
**show** [2] - 18:23, 30:10
**side** [1] - 11:17
**sides** [2] - 3:7, 13:25
**sign** [1] - 29:23
**signal** [2] - 23:20, 23:24
**similar** [3] - 10:14, 28:5, 32:10
**simply** [1] - 21:23
**situation** [3] - 14:12, 27:25, 29:24
**slew** [1] - 28:24
**snuff** [1] - 9:24

**So.2d.355** [1] - 17:13
**someone** [1] - 23:25
**somewhat** [2] - 3:15, 27:9
**soon** [1] - 23:13
**sorry** [2] - 13:15, 21:4
**sort** [1] - 26:21
**SOUTHERN** [1] - 1:1
**Southern** [4] - 11:25, 16:3, 17:14, 26:23
**speaking** [1] - 3:11
**specific** [6] - 6:4, 11:11, 19:15, 19:25, 25:15, 25:18
**specifically** [3] - 8:2, 16:14, 32:4
**specificity** [3] - 4:6, 6:1, 8:7
**specified** [1] - 8:14
**spelled** [1] - 5:24
**Spread** [1] - 17:12
**spreadsheet** [9] - 3:11, 3:24, 4:13, 4:21, 5:6, 7:25, 8:3, 13:8, 25:3
**standard** [2] - 4:10, 24:8
**standards** [1] - 9:25
**start** [1] - 16:7
**state** [2] - 9:16, 19:6
**States** [1] - 1:21
**STATES** [2] - 1:1, 1:10
**status** [1] - 19:16
**statute** [29] - 5:8, 8:24, 9:9, 9:13, 9:17, 11:2, 13:12, 13:22, 14:5, 14:7, 14:8, 14:9, 14:11, 14:13, 14:20, 15:4, 15:10, 15:24, 21:11, 22:7, 22:13, 23:3, 23:4, 23:9, 23:12, 24:16, 28:12, 29:9, 29:11
**statutes** [1] - 3:25
**statutorily** [1] - 13:21
**statutory** [4] - 4:8, 13:13, 15:12, 27:25, 28:10, 28:22
**stay** [1] - 16:8
**step** [1] - 29:18
**still** [6] - 22:16, 27:12, 27:23, 28:18, 30:22, 31:7
**straightforward** [1] - 29:3
**streamlined** [1] - 7:14
**street** [1] - 24:1
**strict** [1] - 19:11
**string** [1] - 32:3
**strong** [1] - 12:18
**strongly** [1] - 32:25
**structure** [2] - 10:7, 14:22
**structured** [1] - 13:23
**sub** [1] - 3:25
**submit** [3] - 15:2, 19:1, 30:11
**subscribers** [1] - 18:15
**subscription** [1] - 4:22
**subset** [3] - 3:24, 9:3, 10:3
**subsets** [1] - 16:11

**substantial** [1] - 13:7
**subsumed** [2] - 11:6, 12:7
**sue** [1] - 30:20
**suffice** [1] - 7:4
**sufficient** [3] - 5:22, 15:20, 20:9
**suggested** [1] - 7:19
**suing** [1] - 13:10
**summary** [1] - 14:3
**Sunshine** [1] - 2:7
**supply** [2] - 22:3, 22:5
**support** [6] - 8:25, 19:23, 20:10, 27:4, 27:17
**supported** [2] - 10:23, 11:16
**survey** [1] - 32:20
**survive** [4] - 32:9, 32:21, 33:5, 33:9
**survives** [1] - 15:13
**suspect** [1] - 30:22

## T

**tailored** [1] - 12:22
**talks** [1] - 12:1
**tangential** [1] - 19:2
**TELEPHONIC** [1] - 1:8
**telephonically** [1] - 2:8
**tend** [1] - 9:21
**term** [2] - 21:21, 22:7
**terms** [4] - 3:12, 17:20, 28:19, 30:18
**testimony** [5] - 5:15, 7:6, 10:13, 11:13, 15:17
**THE** [27] - 1:1, 1:9, 1:12, 1:16, 2:3, 2:12, 2:16, 5:10, 5:19, 7:8, 9:18, 9:21, 13:14, 16:5, 18:5, 19:8, 21:2, 21:4, 21:8, 22:14, 23:25, 26:4, 26:10, 27:21, 28:13, 30:23, 33:25
**Theater** [1] - 28:5
**themselves** [1] - 13:7
**theory** [3] - 7:13, 31:6, 32:9
**Thereupon** [1] - 34:7
**they've** [4] - 8:23, 26:18, 27:6, 27:16
**thinks** [1] - 30:21
**third** [21] - 16:10, 16:15, 16:17, 16:20, 17:5, 17:16, 17:19, 18:1, 18:14, 18:18, 18:19, 18:25, 19:7, 19:18, 20:4, 20:14, 20:17, 21:1, 24:5, 32:1, 32:9
**third-party** [16] - 16:10, 16:15, 16:20, 17:5, 17:16, 18:1, 18:14, 19:7, 19:18, 20:4, 20:14, 20:17, 21:1, 24:5, 32:1, 32:9
**today** [4] - 3:3, 10:2, 31:19, 33:14

**ton** [1] - 10:10
**tool** [1] - 14:10
**touch** [1] - 33:25
**train** [1] - 13:15
**transcription** [1] - 35:4
**travel** [1] - 9:7
**traveling** [2] - 2:19, 32:25
**travels** [1] - 32:17
**treatment** [1] - 29:20
**tri** [1] - 4:22
**tri-subscription** [1] - 4:22
**trial** [2] - 13:23, 19:21
**trip** [1] - 34:3
**trivial** [1] - 7:9
**troubles** [1] - 16:9
**true** [2] - 11:4, 19:23
**trust** [1] - 14:23
**trusts** [2] - 28:1, 28:2
**try** [1] - 30:12
**trying** [3] - 13:17, 23:4, 33:17
**turning** [1] - 18:20
**two** [9] - 4:17, 5:1, 16:6, 16:11, 22:16, 26:2, 27:19, 32:16, 32:18
**Twombly** [1] - 4:10
**types** [2] - 10:25, 11:1
**typically** [1] - 6:11

## U

**ultimately** [1] - 22:19
**unclear** [1] - 7:21
**uncommon** [1] - 22:22
**under** [13] - 3:25, 4:10, 8:22, 9:9, 9:13, 9:16, 12:13, 15:2, 17:6, 19:5, 20:10, 30:12, 30:18
**underpaid** [3] - 3:18, 6:2, 8:4
**underpayment** [3] - 6:7, 6:10, 6:12
**underpayments** [3] - 6:18, 6:20, 8:8
**unintended** [1] - 19:9
**unique** [3] - 11:12, 27:20, 27:21
**United** [1] - 1:21
**UNITED** [2] - 1:1, 1:10
**unless** [2] - 14:4, 19:14
**unlike** [1] - 24:4
**unrelated** [1] - 12:6
**up** [11] - 9:24, 12:3, 13:24, 13:25, 14:11, 15:19, 21:17, 26:11, 30:9, 33:3, 33:17
**usual** [18] - 5:13, 5:16, 5:18, 5:21, 5:23, 6:3, 6:24, 6:25, 7:2, 7:6, 10:4, 12:22, 14:1, 15:18, 21:11, 21:14, 21:18, 21:20
**usual-and-customary** [13] - 5:13, 5:16, 5:18, 5:21,

5:23, 6:24, 6:25, 7:2, 7:6, 10:4, 12:22, 21:11, 21:20
**utilize** [1] - 23:15

## V

**vacation** [2] - 2:24, 23:19
**valid** [1] - 24:18
**VANLANDHAM** [1] - 1:16
**VanLandingham** [1] - 2:15
**Vedra** [1] - 1:14
**Vencor** [1] - 20:18
**verdict** [1] - 15:20
**Verizon** [1] - 26:13
**versus** [2] - 26:13, 28:5
**view** [3] - 4:2, 7:19, 10:16
**virtue** [1] - 26:19
**vs** [4] - 1:5, 2:6, 17:13, 20:16

## W

**wade** [1] - 14:18
**waiting** [1] - 33:18
**waive** [1] - 28:25
**waived** [4] - 26:18, 26:25, 27:16, 29:8
**waiver** [3] - 26:15, 27:5
**waiving** [1] - 27:2
**wants** [1] - 9:7
**waste** [1] - 33:19
**watching** [2] - 23:23, 23:24
**water** [1] - 17:5
**waters** [1] - 14:19
**weeks** [1] - 32:18
**WEST** [1] - 1:2
**Westlaw** [3] - 12:1, 12:8, 26:24
**whatsoever** [1] - 17:1
**whole** [5] - 17:5, 23:20, 25:6, 28:1, 28:24
**wholeheartedly** [1] - 18:8
**winded** [1] - 9:19
**wisely** [1] - 31:4
**Wolf** [1] - 17:13
**words** [2] - 5:24, 12:25
**world** [2] - 11:10, 29:19
**worry** [2] - 26:18, 32:24
**wrap** [1] - 30:9
**wrap-up** [1] - 30:9

## Y

**York** [1] - 26:23